**THE OFFICE OF THE ATTORNEY GENERAL OF TEXAS, Appellant,**

v.

**Jimmy Dee WILSON, Appellee.**

**No. 05–99–00405–CV.**

Court of Appeals of Texas, Dallas.

July 27, 2000.

*Co. v. Budget Rent–A–Car Sys., Inc.,* 796 S.W.2d 763, 772 (Tex.App.—Dallas 1990, writ denied).

John B. Worley, Office of Atty. Gen., Rhonda Amkraut Bayer Pressley, Asst. Atty. Gen., Austin, for Appellant.

Camille Bruce Jones, Office of the Public Defender, Dallas, for Appellee.

Before Justices KINKEADE, JAMES, and FITZGERALD.

## OPINION

Opinion By Justice FITZGERALD.

The Office of the Attorney General of Texas appeals the trial court's order dismissing the Attorney General's motion for enforcement of a child support order against Jimmy Dee Wilson on grounds that no valid child support order existed. In two issues, the Attorney General contends the trial court erred by dismissing its motion for enforcement. Because we conclude an enforceable child support obligation existed in this case, we reverse the trial court's order and remand this cause to the trial court for further proceedings.

Jimmy Dee Wilson and Alicia Wilson married in 1987 and separated in 1991. On March 23, 1992, the 294th District Court of Van Zandt County signed an "Order in Suit Affecting Parent–Child Relationship" which appointed Alicia managing conservator and Wilson possessory conservator of the couple's three children. The court also ordered Wilson to pay Alicia

> regular child support payments in the sum of $200 each month beginning on the 1st day of April, 1992, payable on or before that date and on or before the same day(s) of each month thereafter until all said children shall attain the age of eighteen (18) or be otherwise emancipated; or for so long as any child is fully enrolled in an accredited school leading toward a high school diploma, whichever occurs last.

The court ordered Wilson to send his child support payments to the Attorney General.

On July 27, 1992, the Attorney General filed a "Motion to Modify Powers of Managing Conservator Affecting the Parent–Child Relationship" with the Van Zandt County district court. In its motion, the Attorney General stated that since the March 23, 1992 child support order, the children's aunt, Deborah Alexander, had come into physical possession of the children. The Attorney General requested that the trial court modify the child support order to grant Alexander the power to receive child support payments and to relieve Alicia of that same power.

On November 10, 1992, the Van Zandt County district court entered an order on the Attorney General's motion to modify. The modification order named the children and stated that Wilson had been previously ordered to pay child support to Alicia and, since that time, Alexander had come into physical possession of the children. The court ordered that Alexander "is hereby granted the power to receive and give receipt for periodic payments for the support of the children ... and [Alicia] be, and is hereby, relieved of such power." The order reiterated that Wilson is to send all child support payments to the Attorney General. In a handwritten section, under the heading "Applicability of Order," the order stated, "As to the matters addressed herein, this order supersedes all prior orders for the above named children." Wilson, Alicia, and Alexander each approved the modification order as to form and content.

In 1996, Alicia sued Wilson for divorce in Dallas County. On Alicia's motion, the Van Zandt County district court transferred the suit affecting the parent-child relationship to the 302nd District Court in Dallas County, where it was consolidated with the divorce action. On February 26, 1997, the trial court entered an agreed final decree of divorce. The decree appointed Alicia and Alexander joint managing conservators of the children and appointed Wilson possessory conservator. A copy of the November 10, 1992 modification order was attached to the decree and

incorporated by reference. The agreed decree specifically stated that no modification of that order was requested or ordered. The decree also ordered Wilson to pay Alexander $200 child support per month through the Attorney General.

On March 17, 1998, the Attorney General filed a motion for enforcement of child support order in the Dallas County trial court, alleging that Wilson was behind in his child support payments in the amount of $9,123.15. An attached exhibit contained a schedule that delineated the specific dates child support payments were due, the amounts due, what payments were made, and the total arrearage. The schedule covered the period from November 1, 1992 through March 1, 1998.

At the hearing on the Attorney General's motion, Alexander testified that the figures on the schedule were correct and that Wilson should be given additional credits for making child support payments, including those made during the months of January, February, and March of 1998. On numerous occasions Alexander contacted Wilson to ask why he was not paying his child support obligations. According to Alexander, Wilson responded, "he has to live, too." When the Attorney General called Wilson as a witness, Wilson invoked the Fifth Amendment through his counsel.

Wilson argued that because the November 1992 order, which contained "superseding" language, addressed "child support" by changing the name of the recipient but failed to contain a separate order requiring Wilson to continue paying $200 per month, no valid order requiring the payment of child support existed. The Attorney General argued that the November 1992 modification order superseded the March 1992 order only as to the "matters addressed," and the only matter addressed was the identity of the recipient of the child support payments. The Attorney General requested a judgment for Wilson's arrearage and also asked the court to hold Wilson in contempt for failing to pay child support. After the Attor-

ney General rested, the trial court ordered that no valid court order existed for Wilson to pay child support and dismissed the Attorney General's motion. This appeal followed.

The Attorney General contends the trial court erred as a matter of law by dismissing the motion for enforcement because a valid child support obligation existed. We agree.

The Attorney General requested the trial court to make findings of fact and conclusions of law. Under the heading "Findings of Fact," the trial court found that the November 10, 1992 modification order did not contain "command language" ordering Wilson to pay any sum certain to Alexander or specifying the payment intervals. The trial court further found that the agreed divorce decree merely incorporated the November 10, 1992 order and did not contain any independent language ordering Wilson to pay support to anyone. The trial court concluded that "the orders in question do not constitute orders that are enforceable by contempt; in that, they fail to meet the test for specificity."

 The Attorney General contends, and we agree, that the trial court's "findings of fact" are actually conclusions of law. Accordingly, we address these "findings" as conclusions of law rather than as findings of fact. *See Ray v. Farmers' State Bank*, 576 S.W.2d 607, 608 n. 1 (Tex. 1979). We review the trial court's legal conclusions *de novo*. *See MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex.1999).

 The appropriate remedies for enforcement of a child support obligation include rendering a money judgment and holding the obligor in contempt. *See* Tex. Fam.Code Ann. § 157.162 (Vernon 1996). To be enforceable by a money judgment, a child support obligation must be "sufficiently definite and certain." *See Villanueva v. Office of the Attorney Gen.*, 935 S.W.2d 953, 955 (Tex.App.—San Antonio 1996, writ denied); *Gross v. Gross*, 808

S.W.2d 215, 218–19 (Tex.App.-Houston [14th Dist.] 1991, no writ). A trial court may properly refuse to enter judgment on back child support payments because of an ambiguous, indefinite, and uncertain order. *See Gross*, 808 S.W.2d at 218. To be enforceable by contempt, a child support obligation must "set forth the terms of compliance in clear, specific and unambiguous terms so that the person charged with obeying the decree will readily know exactly what duties and obligations are imposed upon him." *See Ex parte Acker*, 949 S.W.2d 314, 317 (Tex.1997) (quoting *Ex parte Chambers*, 898 S.W.2d 257, 260 (Tex. 1995)); *Rovner v. Rovner*, 778 S.W.2d 905, 907 (Tex.App.—Dallas 1989, writ denied).

■ From the record of the hearing on the motion for enforcement and from the trial court's conclusions of law, it is apparent the trial court concluded the November 10, 1992 modification order superseded the March 23, 1992 order in its entirety. The trial court concluded the November 1992 order, which ordered Wilson to pay child support to Alexander but did not specify the amount or the payment intervals, in and of itself was not sufficiently definite and certain as to constitute an enforceable support order. The November 1992 order, however, did not supersede the March 1992 order in its entirety. The November 1992 order superseded the March 1992 order only *"[a]s to the matters addressed herein."* Regarding child support, the only "matter addressed" in the November 1992 order was the identity of the payee. The Van Zandt County district court ordered Wilson to pay child support to Alexander instead of to Alicia. All other terms of Wilson's support obligation, such as the amount of his payments and the payment periods, were not addressed either in the motion to modify or in the trial court's order and thus remained unchanged. We conclude that the only portion of the March 1992 order that was superseded was the identity of the payee.

Taken together, the March 1992 order and the November 1992 modification order specifically and unambiguously state the terms of Wilson's child support obligation such that Wilson could readily know exactly what duties and obligations were imposed upon him. The evidence clearly shows that Wilson intended to pay the child support so ordered, as reflected in the payment schedule and in Alexander's uncontested testimony.

Therefore, we conclude that as to the relevant time period from November 1, 1992 through February 26, 1997, the date the final decree of divorce was entered, a valid and enforceable child support order was in effect.[1]

For the period commencing February 26, 1997 and continuing through March 1998, a more problematical issue exists because the language in the divorce decree ordering Wilson to pay Alexander child support of $200 per month does not contain a beginning date.

■ In *Ex parte Johns*, 807 S.W.2d 768, 774 (Tex.App.—Dallas 1991, orig. proceeding), this Court emphasized that in reviewing a child support order for clarity or ambiguity, we must view the decree "as a whole" and apply basic common sense. The decree in this case, when addressing matters affecting the children of the marriage, expressly incorporates the November 1992 modification order, which Wilson approved as to form and substance. This approval "is tantamount to an agreement by the signatory that the judgment meets all of its essential requirements." *See Cisneros v. Cisneros*, 787 S.W.2d 550, 552 (Tex.App.—El Paso 1990, no writ). The November 1992 order is based entirely upon the March 1992 order which explicitly details Wilson's child support payment obligations, including a starting date. We conclude the decree effectively incorporated the original child support order as modified.

1. The Attorney General's motion for enforcement of child support order sought past due child support payable to Alexander commencing November 1, 1992.

Equally important, the undisputed evidence in this case shows that after entry of the divorce decree, Wilson continued to make numerous child support payments.[2] This case is therefore quite similar to *Ex parte Payne*, 598 S.W.2d 312 (Tex.Civ. App.—Texarkana 1980, orig. proceeding), *disapproved on other grounds by Huff v. Huff*, 648 S.W.2d 286 (Tex.1983), wherein the child support payment provision did not contain a beginning date for the obligation. The court, in *Payne*, rejected the identical argument made here because the payor had made child support payments under the decree and could not be heard to complain after having done so. The court stated that "even if the judgment were ambiguous, an application of the rules of construction would be to harmonize the judgment with the facts so that a common sense construction would be put upon the language as a whole." *See id.* at 317.

We conclude that, as a matter of law, the March 1992 order, as modified by the November 1992 order and continued by the divorce decree, constitutes an order for child support that is enforceable by contempt or by a money judgment. Accordingly, the trial court erred by dismissing the Attorney General's motion for enforcement.

We reverse the trial court's order dismissing the motion for enforcement of child support order and remand this cause to the trial court for further proceedings consistent with this opinion.

---

2. Wilson made no attempt to cross-examine Alexander at the hearing or otherwise challenge her testimony. As previously observed, Wilson, through his counsel, invoked the Fifth Amendment when the Attorney General called him as a witness. After the Attorney General rested, the trial court granted Wilson's motion to dismiss.