

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00283-CV

IN THE INTEREST OF W.M.R., A CHILD

----------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant M.R. (Father) appeals the trial court's order modifying Father's child support obligation. We modify the trial court's order and affirm it as modified.

---

[1]*See* Tex. R. App. P. 47.4.

## Background Facts

Father and J.M.R. (Mother) divorced on October 3, 2000. The only child of the marriage was W.M.R., who was nine years old. The final divorce decree stated:

> The court finds that [W.M.R.] suffers from muscular dystrophy and will be incapable of being self supporting after the age of eighteen.
>
> IT IS ORDERED AND DECREED that [Father] is obligated to pay and, shall pay to [Mother] child support of $1500.00 per month for [W.M.R.] in monthly installments . . . until the date of the earliest occurrence of one of the following events:
>
> a. the child dies;
>
> b. further order modifying this child support;
>
> c. $1,000 monthly payments are commenced to [W.M.R.] pursuant to New York Life Insurance Company annuity policy.
>
> Upon the commencement of the $1,000.00 monthly annuity payments set forth in paragraph c above[,] the support obligation of [Father] shall be reduced to $500.00 per month . . . and continuing thereafter until the first of the contingencies set forth in paragraph a and b above occurs.

Father's employer was ordered to withhold child support from Father's earnings. "Earnings" was defined as "compensation paid or payable to [Father] for personal services, whether called wages, salary, commission, bonus, or otherwise." Father was also required to provide and maintain medical insurance coverage for W.M.R. and to pay for fifty percent of all health care expenses not covered by insurance.

2

On August 16, 2001, the trial court modified the child support provisions of the divorce decree. The 2001 order states,

> The prior Order of this Court entitled DECREE OF DIVORCE[,] which was signed by the Court on October 3, 2000[,] is hereby modified as follows:
>
> . . . [Father] shall pay to [Mother] child support of $870.75 each month . . . until the first month following the date of the earliest occurrence of one of the events specified below:
>
> (1) the child dies;
>
> (2) further order modifying this child support;
>
> (3) $1,000.00 monthly payments are commenced to [W.M.R.] pursuant to New York Life Ins. Co. annuity policy.
>
> Upon the commencement of the $1,000.00 monthly annuity payments set forth above the support obligation of [Father] shall be reduced by such sum commencing the first day of the first month following the commencement of the annuity payments.

The order also stated that Father should pay 20% "of the net after taxes of any bonus he receives from his employment," and required Father to deliver to Mother a copy of the bonus check.

The new order did not change Father's duties regarding medical insurance or uncovered medical expenses.

When W.M.R. turned eighteen in October, 2008, Father stopped paying child support. On September 22, 2010, Mother filed a "Petition to Enforce Child Support Order and to Modify Parent-Child Relationship." Mother alleged that Father failed to pay any child support from his employment bonuses, and because of W.M.R.'s disability, she asked the court to modify the child support

3

order to extend child support payments "for an indefinite period" and to require Father to pay, "as additional support, a portion of the uninsured expenses for medical supplies, equipment, in-home care, over-the-counter medications, and other related expenses, as well as repairs and maintenance on the wheelchair-equipped van and replacement costs, if necessary." She sought an arrearage for the unpaid child support since W.M.R.'s eighteenth birthday. Father responded to Mother's motion, arguing that the order was incapable of enforcement because it is ambiguous, and that the trial court did not have jurisdiction over the case.

After a hearing, the trial court entered an order on July 7, 2011, finding that Father owed Mother $38,158.73 in unpaid child support. The trial court ordered Father to pay the arrearage plus $1,465.50 a month for W.M.R.'s needs, fifty percent of W.M.R.'s medical expenses, and fifty percent of "all expenses to replace the wheel-chair equipped van." Father then filed this appeal.

**Discussion**

**1. Jurisdiction**

In Father's first three issues, he challenges the trial court's jurisdiction to make the 2011 modification. A court acquires continuing, exclusive jurisdiction in suits affecting the parent-child relationship by the rendition of a final order. Tex. Fam. Code Ann. § 155.001(a) (West 2008). The court retains its jurisdiction until (1) an order of adoption is rendered; (2) the parents have remarried each other; or (3) another court assumes jurisdiction by rendering a final order based on incorrect information that there was no court of continuing, exclusive jurisdiction.

4

*Id*. §§ 155.002, 155.004(a) (West 2008). A court with continuing, exclusive jurisdiction may modify its prior order regarding child support. *Id.* § 155.003 (West 2008). A suit for support for a minor or adult disabled child may be filed in the court of continuing, exclusive jurisdiction as a suit for a modification. *Id*. § 154.305(c) (West 2008).

In this case, the court acquired jurisdiction in 2000 with the rendition of the final divorce decree. Father argues that his child support obligation ended when W.M.R. turned eighteen for two reasons. First, he argues that the annuity payment "zeroed out" his child support obligation, thereby ending it. The 2001 order states that once the annuity payments commenced, Father's obligation "shall be reduced by" the amount of the annuity payments. Because Father's obligation was for less than the amount of the annuity payments, Father argues his obligation ended when the annuity payment began. Father's argument ignores the language of the 2001 order which states that Father's obligation continues until W.M.R.'s death or further order by the trial court. The commencement of the annuity payments does not extinguish Father's obligation, it merely reduces it.

Second, Father argues that the trial court did not make the required findings to continue child support beyond W.M.R.'s eighteenth birthday. Section 154.302 of the family code states:

> (a) The court may order either or both parents to provide for the support of a child for an indefinite period and may determine the rights and duties of the parents if the court finds that:

5

> (1) the child, whether institutionalized or not, requires substantial care and personal supervision because of a mental or physical disability and will not be capable of self-support; and
>
> (2) the disability exists, or the cause of the disability is known to exist, on or before the 18th birthday of the child.

Tex. Fam. Code Ann. § 154.302 (West 2008). Thus, the court cannot order continued child support unless it finds that the child requires substantial care and personal supervision and will not be capable of self-support. *See id*. Father argues first that the 2001 agreed order "completely superseded all prior orders regarding child support." Because the agreed order contains no findings regarding W.M.R.'s disability, he continues, it is insufficient to support the trial court's order of support. Second, he argues that the findings in the original divorce decree that W.M.R. "suffers from muscular dystrophy and will be incapable of being self[-]supporting after the age of eighteen" are insufficient under the statute. Father also argues that we may not imply the findings necessary to support the judgment.

In support of Father's argument that the agreed order "completely superseded" the divorce decree, he cites *In re Clark* for the proposition that "[a]n order modifying a prior child custody or support order necessarily supersedes the prior order . . . . Thus, an order modifying a prior child support order may . . . 'terminate' the obligation imposed by the prior order . . . ." No. 10-03-00037-CV, 2004 WL 1632768, at *5 (Tex. App.—Waco July 21, 2004, no pet.). Father's use

6

of ellipses contorts the original statement. *Clark* actually says "An order modifying a prior child custody or support order necessarily supercedes the prior order *to the extent a modification is ordered*. Thus, an order modifying a prior child support order may *or may not* 'terminate' the obligation imposed by the prior order, *depending on the circumstances*." *Id*. (emphasis added); *see also Office of Attorney Gen. of Tex. v. Wilson*, 24 S.W.3d 902, 906 (Tex. App.—Dallas 2000, no pet.) (holding that a modification order that changed the identity of the payee of child support and did not change any other terms of paying child support left those unaddressed terms "unchanged" and that the two orders read together "specifically and unambiguously state the terms of Wilson's child support obligation"). The only change to Father's child support obligations was a reduction of his monthly payments from $1,500 to $870.75. The 2001 agreed order made no modification to the findings that W.M.R. suffers from muscular dystrophy and will be incapable of supporting himself after the age of eighteen. Thus, those findings remain even after the changes imposed by the agreed order.

Turning to whether the trial court's findings are sufficient to support an order of child support beyond W.M.R.'s eighteenth birthday, we note that the statute requires the trial court to find that W.M.R. (1) requires substantial care and personal supervision because of a mental or physical disability and (2) will not be capable of self-support. *See* Tex. Fam. Code Ann. § 154.302(a)(1) (West 2008). The divorce decree includes the finding that W.M.R. would not be

7

capable of self-support but does not explicitly state that W.M.R. requires substantial care and personal supervision. Father argues that the finding that W.M.R. requires substantial care and personal supervision must be stated in the order and that we cannot imply the finding.

Father did not request findings pursuant to rule 296 or rule 298 of the rules of civil procedure, and there were no separately entered findings of fact or conclusions of law after the divorce decree or any of the modification orders. *See* Tex. R. Civ. P. 296, 298. Father acknowledged in his brief that while a trial court's findings should not be recited in a judgment, when they are, they are given "probative value." *See* Tex. R. Civ. P. 299a; *Gonzalez v. Razi*, 338 S.W.3d 167, 175 (Tex. App.—Houston [1st Dist.] 2011, pet. denied.); *Hill v. Hill*, 971 S.W.2d 153, 157 (Tex. App.—Amarillo 1998, no pet.).

Father argues that rule 299 of the rules of civil procedure prohibit us from implying a finding by the trial court that W.M.R. requires substantial care and personal supervision. Father argues that "when the Court makes express findings in support of its judgment, it is improper to imply other findings necessary to support the judgment." However, the cases Father cites in support do not stand for this proposition. *See In re C.A.B.*, 289 S.W.3d 874, 881 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *E. F. Hutton & Co., v. Fox*, 518 S.W.2d 849, 856 (Tex. Civ. App.—Dallas 1974, writ ref'd n.r.e.). All of these cases reference rule 299, which states,

The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact; but when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment.

Tex. R. Civ. P. 299. The cases that Father cites all involve a ground of recovery or defense in which *no* elements were found by the trial court. *See C.A.B.*, 289 S.W.3d at 881 (holding that it could not imply termination on one ground when no findings were made on that ground and termination was expressly granted on another ground); *E.F. Hutton*, 518 S.W.2d at 856 (noting that the issue was "whether the court has made findings of any elements of contract or promissory estoppel, so that 'omitted unrequested elements' may be supported by presumption under the provisions of Rule 299", and holding that none of the trial court's findings established "any element of either of these grounds of recovery").

In this case, the trial court found that W.M.R. will not be capable of self-support after the age of eighteen. Inability to self-support is one of the two elements needed to support child support beyond W.M.R.'s eighteenth birthday. Therefore, the omitted element of requiring substantial care and personal supervision may, under rule 299, be supplied by presumption if it is supported by the evidence. *See* Tex. R. Civ. P. 299.

Although we do not have the record of the original divorce hearing, Father does not contend that W.M.R.'s health has improved since that time, and the evidence at the last hearing supports the implied finding that W.M.R. continues to

9

require substantial care and personal supervision. As stated in the final divorce decree, W.M.R. has muscular dystrophy. Mother testified that W.M.R.'s disease is "incurable, and it is progressive," and that people with muscular dystrophy "eventually die because of heart and lung failure. But before that happens, they are essentially paralyzed because their muscles have completely broken down." W.M.R.'s heart and lungs are impaired and he cannot lift his arms. Mother testified that she goes home every day at lunch to check on W.M.R. and that she has to leave work unexpectedly "usually once or twice a week" to help him with something he needs. She testified that she has to take him to the doctor and pick up his medications. Mother testified that W.M.R. "is not able to feed or dress himself or get himself a drink or go to the toilet alone or bathe himself or any of those things." Every morning, Mother dresses W.M.R., washes his face, brushes his teeth, shaves him, and gets him into his wheelchair. She testified that it takes her about an hour and a half to get him ready for bed, because she has to bathe him, take care of his toiletries, give him his medications and breathing therapy, and get him into bed. Mother wakes up every two hours to roll W.M.R. over. She testified that W.M.R. can only be alone for about four hours before he needs assistance. Mother has to get someone to stay with him when she is away.

Although W.M.R. does not need constant supervision, the testimony at the hearing was sufficient to support a finding that he requires substantial care and frequent personal supervision. Thus, because the evidence supports the omitted element that W.M.R. requires substantial care and personal supervision, we may

10

supply that element under rule 299. Thus, the trial court's findings are sufficient to support an order of child support beyond W.M.R.'s eighteenth birthday. We overrule Father's first, second, and third issues.

**2. Bonus**

In Father's fourth and fifth issues, he argues that the trial court erred in calculating Father's arrearage to include commissions he earned. The 2011 order included a finding that Father failed to pay $38,158.73 in child support. Because the annuity payments covered all of Father's child support obligation after W.M.R.'s eighteenth birthday, this amount could only be based on that part of the 2001 order which ordered additional child support in "a sum equal to 20% of the net after taxes of any bonus [Father] receive[d] from his employment."[2] Mother argues that the term "bonus" includes payments Father received that were labeled by his employer as commissions.[3]

The 2001 modification order requires Father to pay 20% "of the net after taxes of any bonus he receives from his employment," and required Father to deliver to Mother a copy of the bonus check. The modification order was an agreed judgment, and as such, should be construed in the same manner as a contract. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex. 2000). If

---

[2]Mother does not dispute that the arrearage was calculated by including Father's commissions.

[3]Mother testified at the hearing that she was asking the trial court to find that "the terms bonus and commission are the same for the purposes of [the 2001 modification] order."

the modification order is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

Father testified that he was paid bonuses from previous employers, but he has not received any bonuses with his current employer. At the time of the 2001 modification, he received bonuses based upon certain criteria such as "[s]ales volume, management objectives, [and] strategic objectives." He claims that he made his salary plus bonuses but did not receive commissions.

In 2004, Father accepted his current position. In his current job, Father receives a base salary plus commission which is based "[s]trictly [on] sales volume." He testified that his "regular pay" is his base salary plus the commissions he receives. He also testified that his understanding of the word bonus as used in the order is "a recognized achievement of a particular goal."

Mother testified that during their marriage, Father received his base salary plus bonuses that he received "several times throughout the year." At the hearing, she referred to the commissions that he received in his current job as bonuses because "[t]hat's how he's always described it to me." Mother argues that her testimony regarding the parties' understanding of the term "bonus" demonstrates that they both understood the term in the 2001 modification order to include commissions. However, Father testified that his payment in his current position is structured differently than it was in his previous positions. Mother did

12

not testify that after changing jobs to his current position that he continued to refer to "bonuses" that he received. Mother's testimony only demonstrates her understanding of bonuses in Father's previous payment structures, which were structured as salary plus bonuses "throughout the year." Father's current payment structure is salary plus commissions that were included in his regular wage checks. The 2001 modification order stated that Father was "ordered to deliver to [Mother] within ten days of his receipt of any bonus check a copy of such check." The order did not state that Father was to deliver a copy of every paycheck he received each month, implying that the bonuses that Father was to pay 20% to Mother were *occasional* payments made *in addition to* his regular wages.

Father's testimony explaining his different payment structures as well as the language of the order itself support the dictionary definition of bonus and commission and their common, ordinary usage. Black's Law Dictionary defines bonus as "a premium paid in addition to what is due or expected." Black's Law Dictionary 206 (9th ed. 2009). In the context of employment compensation, a bonus is "paid for services or on consideration in addition to or in excess of the compensation that would ordinarily be given." *Id*.; *see also* Webster's Third New International Dictionary 252 (3d ed. 2002) (defining bonus as "something given or received that is over and above what is expected" and "money or an equivalent given in addition to the usual compensation"). A commission is "a fee paid to an agent or employee for a particular transaction, usu[ally] as a

13

percentage of the money received from the transaction." Black's Law Dictionary 306; *see also* Webster's Third New International Dictionary 457 (defining commission as "a fee paid to an agent or employee for transacting a piece of business or performing a service," especially "a percentage of the money received in a sale or other transaction paid to the agent responsible for the business"). That portion of Father's regular monthly paycheck labeled as a commission is not a bonus as the term is used in the 2001 modification order. The words commission and bonus are not interchangeable. The original divorce decree distinguished bonuses and commissions, noting that Father's employer was to withhold child support from Father's "earnings," which included "wages, salary, commission, bonus, or otherwise." Had the parties intended Father to pay 20% of his commissions, they could have used the phrase in their agreed order, like they had done in the past, and required him to pay 20% of his commissions or bonuses.

The 2001 modification order did not require Father to give Mother 20% of his commissions. Further, because the trial court did not enter a modification order after the hearing in 2011, any implied substantive change it made to add the word commission to the 2001 order is error. *See Escobar v. Escobar*, 711 S.W.2d 230, 231–32 (Tex. 1986) ("The court can only correct the entry of a final written judgment that incorrectly states the judgment actually rendered. Thus, even if the court renders incorrectly, it cannot alter a written judgment which precisely reflects the incorrect rendition."). The trial court therefore erred by

14

calculating Father's arrearage to include commissions he earned. We sustain Father's fourth and fifth issues.

**3. Arrearage**

In Father's sixth issue, he argues that the trial court erred in ordering Father to pay an arrearage because the 2001 order is not sufficiently definite to support the judgment. Specifically, he argues that there is no start date for the payments, that the phrase "net after taxes" is too vague, that there is no firm due date for payments, and that the order "does not specifically order [Father] to pay any portion of future compensation, nor does it state that it applies to subsequent employers."

To be enforceable by a money judgment, a child support obligation must be "sufficiently definite and certain." *See Wilson*, 24 S.W.3d at 905 (citing *Villanueva v. Office of the Attorney Gen.*, 935 S.W.2d 953, 955 (Tex. App.—San Antonio 1996, writ denied), and *Gross v. Gross*, 808 S.W.2d 215, 218–19 (Tex. App.—Houston [14th Dist.] 1991, no writ)). To be enforceable by contempt, a child support obligation must "set forth the terms of compliance in clear, specific and unambiguous terms so that the person charged with obeying the decree will readily know exactly what duties and obligations are imposed upon him." *Id*. at 906 (quoting *Ex parte Acker*, 949 S.W.2d 314, 317 (Tex. 1997)).

Regarding the start date, Father cites to *Ex parte Whitehead*, 908 S.W.2d 68, 71 (Tex. App.—Houston [1st Dist.] 1995, orig. proceeding). *Whitehead* is inapposite. In *Whitehead*, a child support order was held to be unenforceable by

contempt for a number of reasons, including that "the divorce decree did not order [the father] to pay any amount of money to anybody at anytime for insurance" but instead just ordered the father "to keep and maintain health insurance on the children 'at all times.'" *Id*. The appellate court specifically noted that its opinion was "concerned only with the legality of the contempt findings" and did not affect the trial court's money judgment in favor of the mother, which included the unpaid health insurance. *Id*. at 71 n.3. Father cites to no other case supporting his proposition that a child support order is insufficiently definite to support an arrearage because it does not set a start date for periodic payments. Father was paid bonuses only occasionally, and there was no evidence that he or anyone else could foresee with any accuracy when those bonuses would be paid to him. It is clear from the order that any future bonus payment Father was to receive, starting from the date of the order, he was to pay 20% "net after taxes" to Mother. Further, Father conceded that he understood the order well enough to know that the only bonus he received was subject to a 20% payment to Mother.

Father cites *In re T.A.N.*, No. 07-08-0483-CV, 2010 WL 58334, at *4 (Tex. App.—Amarillo, no pet.) (mem. op.), for his argument that a child support obligation that requires a parent to pay a percentage of his net income is too indefinite to support a judgment of arrearages. In *T.A.N.*, the father was ordered to pay 20 percent of his net income, calculated as of his wages on July 1, 2008. *Id*. The parties agreed, however, that the father never provided evidence of his

16

wages as of that date, and the calculation had not been done. *Id.* In this case, the calculation was easily accomplished. Father testified that he received a $500 bonus and that Mother was entitled to 20% of his net income from that bonus after taxes. Mother offered into evidence Father's paystubs from 2003, including the paystub for the $500 bonus. The paystub noted that $173.25 was deducted for taxes, leaving Father a net bonus of $326.75. 20% of $326.75 is $65.35, a calculation Father made in his brief on appeal and which he agrees he owes to Mother. The phrase "net after taxes" is not so indefinite or ambiguous that a judgment for an arrearage computed using the phrase cannot stand. *See Dicker v. Dicker*, 434 S.W.2d 707, 712 (Tex. Civ. App.—Fort Worth 1968, writ ref'd n.r.e.) (noting that a property settlement between a husband and wife which orders the husband to "pay to the Wife the sum of One Hundred Thousand ($100,000.00[)] Dollars, net after taxes, if any" is "clear and it means what it says").

Contrary to Father's argument that there is no firm due date for payments, the 2001 order expressly states that Father "is ordered to deliver to [Mother] within ten days of his receipt of any bonus check . . . his personal check for such 20%." A ten-day timeframe to make payment to Mother is sufficiently clear, definite, and unambiguous to support a money judgment. Father also argues the order "does not specifically order [him] to pay any portion of future income, nor does it state that it applies to subsequent employers." The order requires him to pay 20% "net after taxes" of any bonus he receives; it is an order to pay an

17

amount that is a clearly defined portion of his income. Finally, the order states that Father must make the 20% payment to Mother any time he receives "any bonus . . . from his employment." This too is clear enough that Father should "readily know exactly what duties and obligations are imposed upon him." *Wilson*, 24 S.W.3d at 906. We therefore hold that the 2001 order is not so indefinite that it cannot support a judgment for arrearages. *See Davis v. Mangan*, No. 14-04-00650-CV, 2005 WL 1692048, at *7 (Tex. App.—Houston [14th Dist.] July 21, 2005, no pet.) (mem. op.) (holding that an order requiring the father to "pay 50% of all health care expenses not paid by insurance that are incurred by or on behalf of the parties' children" clearly contemplated that the mother would notify the father when such expenses were incurred and that it was sufficiently definite and certain to permit its enforcement); *In re Watson*, No. 07-00-00162-CV, 2000 WL 1179795, at *4 (Tex. App.—Amarillo Aug. 21, 2000, no pet.) (not designated for publication) ("[A]n order imposing medical support obligations, including health insurance, need not state a specific dollar amount for such obligations to be enforceable."). We overrule Father's sixth issue.

## 4. Enforcement

In his seventh issue, Father argues that because the 2001 order did not expressly state that it was enforceable by contract, Mother cannot enforce the order for any alleged child support obligations after W.M.R.'s eighteenth birthday. The family code provides, "To promote the amicable settlement of disputes between the parties to a suit, the parties may enter into a written agreement

18

containing provisions for support of the child and for modification of the agreement." Tex. Fam. Code. Ann. § 154.124(a) (West 2008). However, the agreement is not enforceable as a contract unless the order expressly states so. *Id*. § 154.124(c); *Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996); *Elfeldt v. Elfeldt*, 730 S.W.2d 657, 658 (Tex. 1987).

Father stated in his motion for new trial that Mother "did not sue for breach of contract." His position now—that Mother is suing on a contract—is an opposite and inconsistent position to the one he took in the trial court. *See Brooks v. Brooks*, 257 S.W.3d 418, 424 (Tex. App.—Fort Worth 2008, pet. denied) (holding that it would be unconscionable to allow husband to enforce a mediated settlement agreement after taking "the clearly inconsistent position" at trial that it was unenforceable). Further, section 154.124 does not apply to cases concerning disabled children. *See Elfeldt*, 730 S.W.2d at 658 (noting that the "suit was brought as a contract action because a court of continuing jurisdiction under the Family Code has no authority to order or to enforce support for a *non-disabled* child over eighteen") (emphasis added). Our opinion in *In re K.M.J.*, No. 02–09–00303–CV, 2011 WL 3525439, at *6 (Tex. App.—Fort Worth July 28, 2011, no pet.) (mem. op.), to which Father cites, holds no differently. In *K.M.J.*, we applied the exception for extended child support payments beyond age eighteen to section 154.001, not section 154.302, the section under which the trial court in this case had the authority to order W.M.R.'s support. *See id*.; *see also* Tex. Fam. Code Ann. §§ 154.001, 154.302 (West 2008); *Bruni*, 924 S.W.2d

19

at 367 (noting specifically that none of the children in that case were disabled); *Lambourn v. Lambourn*, 787 S.W.2d 431, 432 (Tex. App.—Houston [14th Dist.] 1990, writ denied) (noting that section 154.124 (formerly section 14.06(d)) "clearly requires that the parties to an agreement concerning the support of a *non-disabled child* over eighteen must expressly provide in the order incorporating the agreement that its terms are enforceable as contract terms for that remedy to be available") (emphasis added).  We overrule Father's seventh issue.

**5. Confirmation**

In Father's eighth issue, he argues that a trial court may not confirm an arrearage when the support order does not contain a specific dollar amount.  The family code states, "If a motion for enforcement of child support requests a money judgment for arrearages, the court shall confirm the amount of arrearages and render one cumulative money judgment."  Tex. Fam. Code Ann. § 157.263(a) (West Supp. 2012).  Father does not cite to any case law for his proposition that an arrearage based on a percentage cannot be confirmed.  The statute does not require a child support order to state a specific money amount in order to be confirmed under section 157.263, nor have we found any cases in which a confirmation was denied on this basis.  On the contrary, we have found a number of cases in which support payments calculated as a percentage were required to be reduced to a cumulative money judgment.  *See, e.g.*, *In re J.I.M.*, 281 S.W.3d 504, 505, 508 (Tex. App.—El Paso 2008, pet. denied) (holding that

the trial court was required under section 157.263 to confirm the amount of arrearages and render an cumulative money judgment when the divorce decree ordered that child support payments be calculated as a percentage of father's salary and that additional child support would be "twenty percent of the net amount of bonuses received by him from his employer"); *Davis*, 2005 WL 1692048, at *1, *7 (upholding a cumulative money judgment under section 157.263 when the underlying order required father to pay 50% of uninsured medical costs); *In re S.R.O.*, 143 S.W.3d 237, 248 (Tex. App.—Waco 2004, no pet.) (concluding that the trial court erred in not including in the cumulative money judgment for arrearages fifty percent of the unreimbursed health care expenses the children had incurred). We fail to see how, as Father argues, the court is going beyond acting as a "mere scrivener" when it applies a simple mathematical formula to determine a percentage of a proven amount. *See Curtis v. Curtis*, 11 S.W.3d 466, 471 (Tex. App.—Tyler 2000, no pet.) (noting that under section 157.262 "the trial court acts as 'a mere scrivener' who mechanically tallies the amount of arrearages") (quoting *Lewis v. Lewis*, 853 S.W.2d 850, 854 (Tex. App.—Houston [14th Dist.] 1993, no writ)). We overrule Father's eighth issue.

**6. Sufficiency of the evidence**

In Father's ninth issue, he challenges the sufficiency of the evidence supporting the arrearage amount. Because we sustained Father's fourth and fifth issues, we do not need to reach his ninth issue to the extent he complains of the arrearage based on his commissions. *See* Tex. R. App. P. 47.1. As to the arrearage based on his bonus, Father conceded that he received the $500 bonus and that he owes Mother 20% of that bonus after taxes. We therefore overrule Father's ninth issue as to the $65.35 in arrearages.

**7. Discretionary order**

In Father's tenth issue, he argues that the trial court abused its discretion by allowing Mother to purchase a van specially equipped to transport W.M.R.'s wheelchair and by requiring Father to pay half of those expenses. Specifically, Father complains that there is no reasonableness requirement or some other mechanism that limits Mother's ability to incur expenses for which Father would be liable.

Father offers no cases to support this argument. However, there are numerous cases in which the court upheld a child support order requiring one parent to pay for unquantifiable expenses. *See K.M.J.*, 2011 WL 3525439, at *1 ("The agreed order also required James to pay half of all medical expenses and half of all costs associated with school activities."); *In re A.C.B.*, 302 S.W.3d 560, 562 (Tex. App.—Amarillo 2009, no pet.) (holding that evidence supported trial court's order requiring father to reimburse mother for half of private school tuition,

22

fees, and extracurricular activities); *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 577 (Tex. App.—Houston [1st Dist.] 1997), *cert. denied*, 524 U.S. 1142, 119 S. Ct. 1034 (1999)) (ordering Father to pay half of any necessary tutoring costs and half of all uninsured medical costs); *In Interest of J.M. & G.M.*, 585 S.W.2d 854, 855 (Tex. Civ. App.—San Antonio 1979, no writ) (noting that the divorce decree ordered the father to pay for a college education for each of the children; to remain responsible for one-half of their medical and dental expenses; and to pay all tuition costs).

Additionally, we note that Mother must pay the other half of the van-related expenses, and the evidence was that her income is less than Father's income. Her ability to pay her share of the expenses is certainly one limitation on the amount she will incur. Considering that there is no requirement that a court may only order support in a definite amount, and considering that Mother is restrained by her ability to pay the same amount of expenses that Father is required to pay, we cannot say that the trial court abused its discretion by ordering Father to pay half of any van-related expenses that Mother incurs. *See In re Marriage of Grossnickle*, 115 S.W.3d 238, 248 (Tex. App.—Texarkana 2003, no pet.) (holding that, although not enforceable by contempt, trial court's order that father pay one half of daughter's private school tuition, which "ha[d] the potential to change from year to year," was not an abuse of discretion). We overrule Father's tenth issue.

**8. Agreed Offsets**

In his eleventh issue, Father argues that the trial court did not credit Father with the agreed offset of $1,000 for the annuity payments W.M.R. receives. First, there is no evidence that the trial court did not credit Father for the offset. The trial court's award matches exactly the amount Mother calculated in the summary she provided to the court. Mother's summary credits Father with $1,000 a month beginning at W.M.R.'s eighteenth birthday. Secondly, we sustained Father's issue regarding the arrearage based on his commissions and reformed the cumulative money judgment to $65.35 (20% of Father's $500 bonus, net after taxes), which was not subject to a reduction. We therefore overrule Father's eleventh issue.

**9. Trial amendment**

In Father's twelfth issue, he argues that the trial court abused its discretion by not permitting his trial amendment, which he argues was necessary to comport the pleadings with the proof adduced at trial. Specifically, Father focuses on his request to include an affirmative defense that Mother's claim is time barred by a four-year statute of limitations. The trial court held its hearing on February 7, 2011, March 10, 2011, and May 13, 2011. Father filed his motion for leave to amend his pleadings on June 29, 2011. Texas Rule of Civil Procedure 63 states that parties may amend their pleadings after trial by leave of the court "unless there is a showing that such filing will operate as a surprise to the opposite party." Tex. R. Civ. P. 63. The decision to allow or deny the

amendment rests with the sound discretion of the trial court, and the trial court's decision will not be overturned unless it constitutes a clear abuse of discretion. *G.R.A.V.I.T.Y. Enters., Inc. v. Reece Supply Co.*, 177 S.W.3d 537, 542 (Tex. App.—Dallas 2005, no pet.).

A trial amendment that asserts a new cause of action or defense is "prejudicial on its face." *Hakemy Bros., Ltd. v. State Bank & Trust Co.*, *Dallas*, 189 S.W.3d 920, 924 (Tex. App.—Dallas 2006, pet. denied) (citing *State Bar v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994) (per curiam)). The party opposing the amendment generally has the burden to show prejudice or surprise, but the trial court may conclude the amendment is on its face calculated to surprise or that the amendment would reshape the cause of action, prejudicing the opposing party and unnecessarily delaying the trial. *Id*. at 924, 940; *see Chapin & Chapin, Inc. v. Tex. Sand & Gravel Co., Inc.*, 844 S.W.2d 664, 665 (Tex. 1992); *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex. 1980). In that situation, the opposing party's objection is sufficient to show surprise. *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 940 n.3 (Tex. 1990).

To support his argument that the amendment would have conformed the pleadings to the evidence presented at trial by Mother, thereby creating no surprise or prejudice, Father cites to *Krishnan v. Ramirez*, 42 S.W.3d 205, 225 (Tex. App.—Corpus Christi 2001, pet denied). In *Krishnan*, the appellate court upheld the trial court's decision to allow a post-trial amendment because the "appellant did not make any showing to the trial court that her settlement strategy

25

or her trial posture would have changed knowing that she risked full range exposure at trial. She has not shown evidence of surprise or prejudice." *Id*. In *Krishnan*, the appellant contended that she was prejudiced because "the amended pleadings exposed her to a full claim instead of the two-thirds claim and her settlement strategy would have been greatly influenced by knowing that she risked full range exposure at trial." *Id.* *Krishnan*, however, is not fully supportive of Father's argument for two reasons. First, the appellee in *Krishnan* sought to amend his pleadings during the trial, while here Father sought an amendment forty-seven days after three hearings were concluded. *See id.* Second, in *Krishnan* the appellee was not seeking to add a new cause of action or defense while here, Father has sought to add numerous new causes of action. *See id.*

Father also argues that Mother only offered general, conclusory, non-specific contentions of being surprised or prejudiced; she did not offer a supporting affidavit for her objection, and no witnesses were called at the hearing testifying to specific facts to support her surprise or prejudice. Father, however, does not cite any case law to support this argument that Mother must prove any of these things to substantiate her surprise or prejudice. To the contrary, Mother only had to object to the trial amendment alleging surprise or prejudice, because in a situation where "the amendment would reshape the cause of action, prejudicing the opposing party . . . the opposing party's objection is sufficient to show surprise." *Hakemy Bros.*, 189 S.W.3d at 924; *see Chapin & Chapin*, 844

26

S.W.2d at 665 ("A party opposing a trial amendment does not have to prove prejudice or surprise if the amendment is a substantive one which changes the nature of the trial."); *Greenhalgh*, 787 S.W.2d at 940 ("A newly plead affirmative defense substantially changes the nature of a trial unlike adding a verified plea conforming to issues already pleaded, amending the amount of damages claimed."). Father pointed to no evidence indicating that Mother should have known that Father's affirmative limitations defense would be at issue. *See White v. Sullins*, 917 S.W.2d 158, 161 (Tex. App.—Beaumont 1996, writ denied) (holding that trial court did not abuse its discretion in denying a trial amendment adding a comparative negligence defense when "the record contains nothing indicating the plaintiffs should have known comparative negligence was an issue"). We cannot say that the trial court abused its discretion in denying the trial amendment. *See Hakemy Bros.*, 189 S.W.3d at 926; *see also Burroughs Corp. v. Farmers Dairies*, 538 S.W.2d 809, 811 (Tex. Civ. App.—El Paso 1976, writ ref'd n.r.e.) ("It is held that a trial amendment ordinarily should be denied when sought after the evidence for both parties has been fully offered and when it would change the theory of the trial.").

Father argues that, in the alternative, the statute of limitations issue was tried by consent. Father claims that the issue of the amount and date of payments were fully litigated during the trial. He also argues that "[t]he evidence adduced at trial made clear that the four year statute of limitations barred the recovery sought by [Mother], because she was seeking to recover alleged

27

payments which she claimed were due nearly ten years prior." To determine whether an issue was tried by consent, the court must examine the record not for evidence of the issue, but rather for evidence of trial of the issue. *In re P.D.D.*, 256 S.W.3d 834, 840 (Tex. App.—Texarkana 2008, no pet.). Rule 67 applies "where it clearly appears from the record as a whole that the parties tried out a controverted issue and that the issue was fully developed." *Fiduciary Mortgage Co. v. City Nat'l Bank of Irving*, 762 S.W.2d 196, 202 (Tex. App.—Dallas 1988, writ denied); *See* Tex. R. Civ. P. 67; *Praeger v. Wilson*, 721 S.W.2d 597, 603 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.). "A party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint." *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied). However, "trial by consent is inapplicable when evidence relevant to an unpleaded matter is also relevant to a pleaded issue; in that case admission of the evidence would not be calculated to elicit an objection." *Id.* (citing *In re J.M.*, 156 S.W.3d 696, 705 (Tex. App.—Dallas 2005, no pet.)). In this case, the amount and date of payment were raised to enforce the 2001 child support order; nothing in the record indicates that Mother understood that limitations was at issue or that the evidence of dates of payment should have elicited an objection. Because the evidence to which Father cites in support of his limitations claim was relevant to pleaded issues, trial by consent is inapplicable in this case. *See*

28

*P.D.D.*, 256 S.W.3d at 840; *Case Corp.*, 184 S.W.3d at 771. We overrule Father's twelfth issue.

**10. Excessive support**

In Father's thirteenth issue, he argues that the trial court abused its discretion by ordering Father to pay excessive child support. He claims that the trial court did not take into consideration Father's ability to pay and his right of self-subsistence. To determine the amount of support to be paid after a child's eighteenth birthday, section 154.306 of the family code states that the court shall give special consideration to the following factors:

> (1) any existing or future needs of the adult child directly related to the adult child's mental or physical disability and the substantial care and personal supervision directly required by or related to that disability;
>
> (2) whether the parent pays for or will pay for the care or supervision of the adult child or provides or will provide substantial care or personal supervision of the adult child;
>
> (3) the financial resources available to both parents for the support, care, and supervision of the adult child; and
>
> (4) any other financial resources or other resources or programs available for the support, care, and supervision of the adult child.

Tex. Fam. Code Ann. § 154.306 (West 2008).

As to the first factor, the court heard testimony from Mother concerning W.M.R.'s existing and future needs. Documentary evidence was also presented and considered. *See In re J.L.F.*, No. 04-01-00654-CV, 2002 WL 1625572, at *3 (Tex. App.—San Antonio July 24, 2002, no pet.) (not designated for publication)

(holding that the evidence was sufficient to support the first factor when mother testified that the adult child's disability existed and required medical attention, thus indicating that "it [was] likely that substantial care and personal supervision are required to help [the adult child] with her disability"); *see also In re Gonzalez*, 993 S.W.2d 149, 159–60 (Tex. App.—San Antonio 1999, no pet.) (noting that no expert testimony is required to determine if a child's need exists).

Turning to whether the parent pays or provides for the care or supervision of the adult child, the trial court also considered substantial evidence to support this factor. Both parents are not required to make equal monetary contributions. Instead, each parent must "contribute money or services to the support and maintenance of the children according to the respective ability of each parent and the needs of the children." *Rose v. Rubenstein,* 693 S.W.2d 580, 583 (Tex. App.—Houston [14th Dist.] 1985, writ dism'd). ("In determining child support obligations, courts often recognize that parents make different contributions to a child's welfare."). The court heard substantial evidence about Mother's continuous care for W.M.R. as the primary caregiver. Father did not provide daily care for W.M.R.

Sufficient evidence was also presented for the third factor, the financial resources available to both parents. The amount of child support that each parent pays does not solely depend on their earnings. Instead, "[t]he court should consider the financial resources available to each parent, the respective obligations borne by each parent, nonfinancial contributions made and the

30

standard of living to which the children have been accustomed." *See id.* (citing *Hazelwood v. Jinkins*, 580 S.W.2d 33 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ)). For 2010, Mother's annual income was less than $70,000 and Father's annual income was approximately $90,000. Further, Mother was ordered to pay for half of W.M.R.'s expenses even though she is the primary caregiver for W.M.R. and her annual income and net resources are less than Father's. Father argues that the court did not consider his right to self-subsistence, citing *Valaque v. Valaque*, 574 S.W.2d 608 (Tex. Civ. App.—San Antonio 1978, no writ), which stands for the proposition that "[t]here is some minimum amount necessary for a bare [subsistence], and less than such amount renders a child support order unenforceable." *Id.* at 609–610 (citing *Anderson v. Anderson*, 503 S.W.2d 124, 127 (Tex. Civ. App—Corpus Christi 1973, no writ)). However, the duty to pay child support is not determined solely by an obligor's ability to pay from earnings, but also by his ability to pay from any and all sources that may be available. *See* Tex. Fam. Code Ann. § 154.062 (West Supp. 2012); *In Interest of S.B.C.*, 952 S.W.2d 15, 18 (Tex. App.—San Antonio 1997, no writ). Here, evidence of Father's significant financial assets included a Toyota 4Runner, a motorcycle, a BMW, an RV-Ford, a boat, a jet ski, a glider, a trailer, and a plane. *See Krempp v. Krempp*, 590 S.W.2d 229, 231 (Tex. Civ. App.—Fort Worth 1979, no writ) (ordering Father to pay $1000 in child support was not excessive after reviewing evidence reflecting a Mercedes-Benz automobile and an airplane). Father's financial information admitted into evidence showed two checking accounts with

balances of roughly $58,000 and $26,000, a 401k with a balance of approximately $55,000, and an IRA with a balance of almost $70,000. There was no evidence presented by Father that he is unable to pay the support.

Finally, the trial court considered sufficient evidence of other financial resources for the support, care, and supervision of W.M.R. This evidence included the annuity payment that W.M.R. receives in the amount of $1,000 a month. This amount, however, is not sufficient to cover all of W.M.R.'s monthly expenses. *See Rose*, 693 S.W.2d at 583 (noting that "[t]he record is quite clear that Eddie's earnings of $560 per month do not cover his documented expenses of $862 per month. . . . Our review of the record indicates that Eddie is not currently self-supporting."). Mother testified that W.M.R.'s monthly expenses were $3,931. Mother's estimation included items that Father was already responsible for paying, such as medical expenses. It was reasonable for the trial court to reduce Mother's estimation by those expenses and then order Father to pay half of the reduced amount. Father's savings, salary, and other financial assets demonstrate that he has the financial ability to support himself and his son. Because the trial court considered sufficient evidence to support each factor, it did not abuse its discretion. *See In re M.W.T.*, 12 S.W.3d 598, 607 (Tex. App.—San Antonio 2000, pet. denied) ("Because the record contains information concerning all of the Section 154.306 criteria, the trial court did not abuse its discretion in assessing current child support."). The trial court's child support order is not excessive. We overrule Father's thirteenth issue.

32

**11. Attorney's Fees**

In his fourteenth issue, Father argues that the trial court abused its discretion by awarding attorney's fees to Mother without an adequate evidentiary foundation. Specifically, Father makes two arguments: (1) that Mother failed to introduce any evidence that the hourly rates charged by her attorneys were reasonable; and (2) Mother's attorney's fees should not be allowed because the fees were not segregated between the enforcement action and the modification action.

The trial court has broad discretion in awarding attorney's fees in family law matters that involve the parent-child relationship. *Hardin*, 161 S.W.3d at 24 (citing Tex. Fam. Code Ann. § 106.002 (Vernon 2002)); *Bruni*, 924 S.W.2d at 368). This award, however, must be supported by evidence. *Id*. (citing *Thomas v. Thomas*, 895 S.W.2d 895, 898 (Tex. App.—Waco 1995, no writ)). An attorney's sworn testimony concerning an attorney's fees award is considered expert testimony. *Id*. (citing *Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 148 (Tex. App.—Houston [1st Dist.] 1986, no writ)).

Father argues that the evidence was insufficient to support the attorney's fee award because Mother's attorney did not introduce evidence that the specific hourly rate charged by each attorney and paralegal was reasonable. Specificity, however, is not required. Instead, "[t]o support a request for reasonable attorney's fees, testimony should be given regarding the hours spent on the case, the nature of preparation, complexity of the case, experience of the

attorney, and the prevailing hourly rates." *Hardin*, 161 S.W.3d at 24 (citing *Goudeau v. Marquez*, 830 S.W.2d 681, 683 (Tex. App.—Houston [1st Dist.] 1992, no writ)). The court does not need to hear evidence on each factor but can "look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties." *Hagedorn v. Tisdale*, 73 S.W.3d 341, 353 (Tex. App.—Amarillo 2002, no pet.) (citing *Chilton Ins. Co. v. Pate & Pate Enters., Inc.,* 930 S.W.2d 877, 896 (Tex. App.—San Antonio 1996, writ denied)).

In *In re A.S.G.*, 345 S.W.3d 443, 451 (Tex. App.—San Antonio 2011, no pet.), the attorney "did not testify to her hourly rate or exact number of hours spent on the case, [but] she did specifically ask for $1,500 in attorney's fees and explained to the trial court their necessity and reasonableness." The court held that this comports with the basic requirements and was sufficient to support the attorney's fee award. *Id*. at 451–52. In this case, Mother's attorney testified regarding each issue and presented an affidavit and billing record. The testimony reflected the attorney's experience, the novelty and difficulty of the issue in this case, and his opinion that his hourly rate of $250 was "traditional" for Denton County. He also detailed his work and preparations for this case. The attorney's testimony and evidence is a reasonable basis for the award of $29,495.51 for Mother's attorney's fees. *See In re A.B.P.*, 291 S.W.3d 91, 98–99 (Tex. App.—Dallas 2009, no pet.) (concluding that attorney's testimony that he

34

believed his fees were reasonable and necessary, that he was familiar with the customary fees in the community, and that he believed his fees fall within that range was sufficient for attorney's fee award); *Henry v. Henry*, 48 S.W.3d 468, 481 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (holding that testimony "regarding the reasonableness of the fees, the hours worked, the rate charged, and the services provided" was sufficient evidence for attorney's fee award).

Father also contends that Mother's attorney's fees should not be allowed because the fees were not segregated between the enforcement action and the modification action. Segregation of attorney's fees is required when two or more causes of action are involved. In such a case, "the party asserting those causes must allocate the time spent between those for which attorneys' fees may be recovered and those for which they may not." *See S. Concrete Co. v. Metrotec Fin., Inc.*, 775 S.W.2d 446, 449 (Tex. App.—Dallas 1989, no writ) (citing *Bullock v. Kehoe*, 678 S.W.2d 558, 560 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.)). An exception exists "when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their 'prosecution or defense entails proof or denial of essentially the same facts.'" *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11–12 (Tex. 1991). However, "it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–314 (Tex. 2006). A court must examine the facts alleged in support of the claim to

determine whether the claims are inextricably intertwined. *See Kurtz v. Kurtz*, 158 S.W.3d 12, 22 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (citing *Stewart Title*, 822 S.W.2d at 11–12). If the prosecution or defense does not entail proof or denial of essentially the same facts, the exception does not apply. *Air Routing Int'l Corp. (Canada) v. Britannia Airways, Ltd.*, 150 S.W.3d 682, 687 (Tex. App—Houston [14th Dist.] 2004, no pet.).

Attorney's fees are recoverable in both an enforcement action and modification action. *See Beck v. Walker*, 154 S.W.3d 895 (Tex. App.—Dallas 2005, no pet.) (noting that "[w]hether to award attorney fees, pursuant to the Family Code, to a child support obligee who successfully moves to enforce child support is within the discretion of the trial court); *In the Interest of H.S.N.*, 69 S.W.3d 829, 835 (Tex. App.—Corpus Christi 2002, no pet.) (finding no abuse of discretion in award of attorney's fees as child support regarding motion to modify and motion to transfer). In this case, the modification action and the enforcement action were based on the same facts. Mother's attorney testified as to the similarity in preparation for the hearings on both issues. Mother was therefore not required to segregate her attorney's fees. *See Kurtz*, 158 S.W.3d at 24 (holding that mother's defense of father's counterclaims to decrease child support and his claim for offsets for payments made directly to mother, are inextricably intertwined with her child support modification claims because those claims "arise out of the same transaction and are so interrelated that their

prosecution or defense entails proof or denial of essentially the same facts"). We overrule Father's fourteenth issue.

## Conclusion

Having sustained Father's fourth and fifth issues and overruled Father's other issues, we modify the trial court's order to reduce the amount of the arrearage to $65.35. We affirm the trial court's order as modified.

LEE GABRIEL
JUSTICE

PANEL: WALKER, MCCOY, and GABRIEL, JJ.

DELIVERED: November 1, 2012