02-11-283-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00283-CV

 

 


 
 
 In
 the Interest of W.M.R., a Child
  
  
  
  
  
  
 
 
 §
  
 §
  
 §
  
 §
  
  
 
 
 From the 16th District Court
  
 of
 Denton County (2000-10317-16)
  
 November
 1, 2012
  
 Opinion
 by Justice Gabriel
 
 


JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
error in the trial court’s order.  The order is modified to reduce the amount
of the arrearage to $65.35.  It is ordered that the order of the trial court is
affirmed as modified.

          It
is further ordered that the parties shall bear their own costs of this appeal,
for which let execution issue.

SECOND DISTRICT COURT OF APPEALS 

 

 

 

By_________________________________

   
Justice Lee Gabriel

 

 



 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00283-CV


 
 
 In the Interest of W.M.R., a Child
 
 
  
 
 
  
 
 
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 


 

 

----------

FROM THE 16th
District Court OF Denton COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Appellant
M.R. (Father) appeals the trial court’s order modifying Father’s child support
obligation.  We modify the trial court’s order and affirm it as modified.

Background Facts

Father
and J.M.R. (Mother) divorced on October 3, 2000.  The only child of the
marriage was W.M.R., who was nine years old.  The final divorce decree stated:

The court finds that
[W.M.R.] suffers from muscular dystrophy and will be incapable of being self
supporting after the age of eighteen.

 

IT IS ORDERED AND
DECREED that [Father] is obligated to pay and, shall pay to [Mother] child
support of $1500.00 per month for [W.M.R.] in monthly installments . . . until
the date of the earliest occurrence of one of the following events:

 

a. the child dies;

 

b. further order
modifying this child support;

 

c. $1,000 monthly
payments are commenced to [W.M.R.] pursuant to New York Life Insurance Company
annuity policy.

 

Upon the commencement
of the $1,000.00 monthly annuity payments set forth in paragraph c above[,] the
support obligation of [Father] shall be reduced to $500.00 per month . . . and
continuing thereafter until the first of the contingencies set forth in
paragraph a and b above occurs.

 

Father’s
employer was ordered to withhold child support from Father’s earnings.  “Earnings”
was defined as “compensation paid or payable to [Father] for personal services,
whether called wages, salary, commission, bonus, or otherwise.”  Father was
also required to provide and maintain medical insurance coverage for W.M.R. and
to pay for fifty percent of all health care expenses not covered by insurance.

On
August 16, 2001, the trial court modified the child support provisions of the
divorce decree.  The 2001 order states,

The prior Order of
this Court entitled DECREE OF DIVORCE[,] which was signed by the Court on
October 3, 2000[,] is hereby modified as follows:

 

 . . . [Father] shall
pay to [Mother] child support of $870.75 each month . . . until the first month
following the date of the earliest occurrence of one of the events specified
below:

 

(1) the child dies;

 

(2) further order
modifying this child support;

 

(3) $1,000.00 monthly
payments are commenced to [W.M.R.] pursuant to New York Life Ins. Co. annuity
policy.

 

Upon the commencement
of the $1,000.00 monthly annuity payments set forth above the support
obligation of [Father] shall be reduced by such sum commencing the first day of
the first month following the commencement of the annuity payments.

 

The
order also stated that Father should pay 20% “of the net after taxes of any
bonus he receives from his employment,” and required Father to deliver to
Mother a copy of the bonus check.

The
new order did not change Father’s duties regarding medical insurance or uncovered
medical expenses.

When
W.M.R. turned eighteen in October, 2008, Father stopped paying child support.  On
September 22, 2010, Mother filed a “Petition to Enforce Child Support Order and
to Modify Parent-Child Relationship.”  Mother alleged that Father failed to pay
any child support from his employment bonuses, and because of W.M.R.’s
disability, she asked the court to modify the child support order to extend
child support payments “for an indefinite period” and to require Father to pay,
“as additional support, a portion of the uninsured expenses for medical
supplies, equipment, in-home care, over-the-counter medications, and other
related expenses, as well as repairs and maintenance on the wheelchair-equipped
van and replacement costs, if necessary.”  She sought an arrearage for the
unpaid child support since W.M.R.’s eighteenth birthday.  Father responded to
Mother’s motion, arguing that
the
order was incapable of enforcement because it is ambiguous, and that the trial
court did not have jurisdiction over the case.

After
a hearing, the trial court entered an order on July 7, 2011, finding that
Father owed Mother $38,158.73 in unpaid child support.  The trial court ordered
Father to pay the arrearage plus $1,465.50 a month for W.M.R.’s needs, fifty
percent of W.M.R.’s medical expenses, and fifty percent of “all expenses to
replace the wheel-chair equipped van.”  Father then filed this appeal.

Discussion

1.
Jurisdiction

In
Father’s first three issues, he challenges the trial court’s jurisdiction to
make the 2011 modification.  A court acquires continuing, exclusive
jurisdiction in suits affecting the parent-child relationship by the rendition
of a final order.  Tex. Fam. Code Ann. § 155.001(a) (West 2008).  The
court retains its jurisdiction until (1) an order of adoption is rendered;
(2) the parents have remarried each other; or (3) another court
assumes jurisdiction by rendering a final order based on incorrect information
that there was no court of continuing, exclusive jurisdiction.  Id. §§ 155.002,
155.004(a) (West 2008).  A court with continuing, exclusive jurisdiction may
modify its prior order regarding child support.  Id. § 155.003
(West 2008).  A suit for support for a minor or adult disabled child may be
filed in the court of continuing, exclusive jurisdiction as a suit for a
modification.  Id. § 154.305(c) (West 2008).

In
this case, the court acquired jurisdiction in 2000 with the rendition of the
final divorce decree.  Father argues that his child support obligation ended
when W.M.R. turned eighteen for two reasons.  First, he argues that the annuity
payment “zeroed out” his child support obligation, thereby ending it.  The 2001
order states that once the annuity payments commenced, Father’s obligation
“shall be reduced by” the amount of the annuity payments.  Because Father’s
obligation was for less than the amount of the annuity payments, Father argues
his obligation ended when the annuity payment began.  Father’s argument ignores
the language of the 2001 order which states that Father’s obligation continues
until W.M.R.’s death or further order by the trial court.  The commencement of
the annuity payments does not extinguish Father’s obligation, it merely reduces
it.

Second,
Father argues that the trial court did not make the required findings to
continue child support beyond W.M.R.’s eighteenth birthday.  Section 154.302 of
the family code states:

(a) The court may
order either or both parents to provide for the support of a child for an
indefinite period and may determine the rights and duties of the parents if the
court finds that:

 

(1) the child,
whether institutionalized or not, requires substantial care and personal
supervision because of a mental or physical disability and will not be capable
of self-support; and

 

(2) the disability
exists, or the cause of the disability is known to exist, on or before the 18th
birthday of the child.

 

Tex.
Fam. Code Ann. § 154.302 (West 2008).  Thus, the court cannot order
continued child support unless it finds that the child requires substantial
care and personal supervision and will not be capable of self-support.  See
id.  Father argues first that the 2001 agreed order “completely superseded
all prior orders regarding child support.”  Because the agreed order contains
no findings regarding W.M.R.’s disability, he continues, it is insufficient to
support the trial court’s order of support.  Second, he argues that the findings
in the original divorce decree that W.M.R. “suffers from muscular dystrophy and
will be incapable of being self[-]supporting after the age of eighteen” are
insufficient under the statute.  Father also argues that we may not imply the
findings necessary to support the judgment.

In
support of Father’s argument that the agreed order “completely superseded” the
divorce decree, he cites In re Clark for the proposition that “[a]n
order modifying a prior child custody or support order necessarily supersedes
the prior order . . . .  Thus, an order modifying a prior child support order
may . . . ‘terminate’ the obligation imposed by the prior order . . . .”  No. 10-03-00037-CV,
2004 WL 1632768, at *5 (Tex. App.—Waco July 21, 2004, no pet.).  Father’s use
of ellipses contorts the original statement.  Clark actually says “An
order modifying a prior child custody or support order necessarily supercedes
the prior order to the extent a modification is ordered.  Thus, an order
modifying a prior child support order may or may not ‘terminate’ the
obligation imposed by the prior order, depending on the circumstances.” 
Id. (emphasis added); see also Office of Attorney Gen. of Tex.
v. Wilson, 24 S.W.3d 902, 906 (Tex. App.—Dallas 2000, no pet.) (holding
that a modification order that changed the identity of the payee of child
support and did not change any other terms of paying child support left those
unaddressed terms “unchanged” and that the two orders read together “specifically
and unambiguously state the terms of Wilson’s child support obligation”). The
only change to Father’s child support obligations was a reduction of his
monthly payments from $1,500 to $870.75.  The 2001 agreed order made no
modification to the findings that W.M.R. suffers from muscular dystrophy and will
be incapable of supporting himself after the age of eighteen.  Thus, those
findings remain even after the changes imposed by the agreed order.

Turning
to whether the trial court’s findings are sufficient to support an order of
child support beyond W.M.R.’s eighteenth birthday, we note that the statute
requires the trial court to find that W.M.R. (1) requires substantial care
and personal supervision because of a mental or physical disability and (2) will
not be capable of self-support.  See Tex. Fam. Code Ann. § 154.302(a)(1)
(West 2008).  The divorce decree includes the finding that W.M.R. would not be
capable of self-support but does not explicitly state that W.M.R. requires
substantial care and personal supervision.  Father argues that the finding that
W.M.R. requires substantial care and personal supervision must be stated in the
order and that we cannot imply the finding.

Father
did not request findings pursuant to rule 296 or rule 298 of the rules of civil
procedure, and there were no separately entered findings of fact or conclusions
of law after the divorce decree or any of the modification orders.  See
Tex. R. Civ. P. 296, 298.  Father acknowledged in his brief that while a trial
court’s findings should not be recited in a judgment, when they are, they are
given “probative value.” See Tex. R. Civ. P. 299a; Gonzalez v. Razi,
338 S.W.3d 167, 175 (Tex. App.—Houston [1st Dist.] 2011, pet. denied.); Hill
v. Hill, 971 S.W.2d 153, 157 (Tex. App.—Amarillo 1998, no pet.).

Father
argues that rule 299 of the rules of civil procedure prohibit us from implying
a finding by the trial court that W.M.R. requires substantial care and personal
supervision.  Father argues that “when the Court makes express findings in
support of its judgment, it is improper to imply other findings necessary to
support the judgment.”  However, the cases Father cites in support do not stand
for this proposition.  See In re C.A.B., 289 S.W.3d 874, 881 (Tex. App.—Houston
[14th Dist.] 2009, no pet.); E. F. Hutton & Co., v. Fox, 518 S.W.2d 849,
856 (Tex. Civ. App.—Dallas 1974, writ ref’d n.r.e.).

All
of these cases reference rule 299, which states,

The judgment may not
be supported upon appeal by a presumed finding upon any ground of recovery or
defense, no element of which has been included in the findings of fact; but
when one or more elements thereof have been found by the trial court, omitted
unrequested elements, when supported by evidence, will be supplied by
presumption in support of the judgment.

 

Tex.
R. Civ. P. 299.  The cases that Father cites all involve a ground of recovery
or defense in which no elements were found by the trial court.  See C.A.B.,
289 S.W.3d at 881 (holding that it could not imply termination on one ground
when no findings were made on that ground and termination was expressly granted
on another ground); E.F. Hutton, 518 S.W.2d at 856 (noting that the
issue was “whether the court has made findings of any elements of contract or
promissory estoppel, so that ‘omitted unrequested elements’ may be supported by
presumption under the provisions of Rule 299”, and holding that none of the
trial court’s findings established “any element of either of these grounds of
recovery”).

In
this case, the trial court found that W.M.R. will not be capable of
self-support after the age of eighteen.  Inability to self-support is one of
the two elements needed to support child support beyond W.M.R.’s eighteenth
birthday.  Therefore, the omitted element of requiring substantial care and
personal supervision may, under rule 299, be supplied by presumption if it is
supported by the evidence.  See Tex. R. Civ. P. 299.

Although
we do not have the record of the original divorce hearing, Father does not
contend that W.M.R.’s health has improved since that time, and the evidence at
the last hearing supports the implied finding that W.M.R. continues to require
substantial care and personal supervision.  As stated in the final divorce
decree, W.M.R. has muscular dystrophy.  Mother testified that W.M.R.’s disease
is “incurable, and it is progressive,” and that people with muscular dystrophy
“eventually die because of heart and lung failure.  But before that happens,
they are essentially paralyzed because their muscles have completely broken
down.”  W.M.R.’s heart and lungs are impaired and he cannot lift his arms.  Mother
testified that she goes home every day at lunch to check on W.M.R. and that she
has to leave work unexpectedly “usually once or twice a week” to help him with
something he needs.  She testified that she has to take him to the doctor and
pick up his medications.  Mother testified that W.M.R. “is not able to feed or
dress himself or get himself a drink or go to the toilet alone or bathe himself
or any of those things.”  Every morning, Mother dresses W.M.R., washes his
face, brushes his teeth, shaves him, and gets him into his wheelchair.  She
testified that it takes her about an hour and a half to get him ready for bed,
because she has to bathe him, take care of his toiletries, give him his
medications and breathing therapy, and get him into bed.  Mother wakes up every
two hours to roll W.M.R. over.  She testified that W.M.R. can only be alone for
about four hours before he needs assistance.  Mother has to get someone to stay
with him when she is away.

Although
W.M.R. does not need constant supervision, the testimony at the hearing was
sufficient to support a finding that he requires substantial care and frequent
personal supervision.  Thus, because the evidence supports the omitted element
that W.M.R. requires substantial care and personal supervision, we may supply
that element under rule 299.  Thus, the trial court’s findings are sufficient
to support an order of child support beyond W.M.R.’s eighteenth birthday.  We
overrule Father’s first, second, and third issues.

2. Bonus

In
Father’s fourth and fifth issues, he argues that the trial court erred in calculating
Father’s arrearage to include commissions he earned.  The 2011 order included a
finding that Father failed to pay $38,158.73 in child support.  Because the
annuity payments covered all of Father’s child support obligation after W.M.R.’s
eighteenth birthday, this amount could only be based on that part of the 2001
order which ordered additional child support in “a sum equal to 20% of the net
after taxes of any bonus [Father] receive[d] from his employment.”[2] 
Mother argues that the term “bonus” includes payments Father received that were
labeled by his employer as commissions.[3]

The
2001 modification order requires Father to pay 20% “of the net after taxes of
any bonus he receives from his employment,” and required Father to deliver to
Mother a copy of the bonus check.  The modification order was an agreed
judgment, and as such, should be construed in the same manner as a contract.  Gulf
Ins. Co. v. Burns Motors, Inc., 22 S.W.3d 417, 422 (Tex. 2000).  If
the modification order is so worded that it can be given a certain or definite
legal meaning or interpretation, then it is not ambiguous and the court will
construe the contract as a matter of law. See Coker v. Coker, 650 S.W.2d
391, 393 (Tex. 1983).

Father
testified that he was paid bonuses from previous employers, but he has not
received any bonuses with his current employer.  At the time of the 2001
modification, he received bonuses based upon certain criteria such as “[s]ales
volume, management objectives, [and] strategic objectives.”  He claims that he
made his salary plus bonuses but did not receive commissions.

In
2004, Father accepted his current position.  In his current job, Father
receives a base salary plus commission which is based “[s]trictly [on] sales
volume.”  He testified that his “regular pay” is his base salary plus the commissions
he receives.  He also testified that his understanding of the word bonus as
used in the order is “a recognized achievement of a particular goal.”

Mother
testified that during their marriage, Father received his base salary plus
bonuses that he received “several times throughout the year.”  At the hearing,
she referred to the commissions that he received in his current job as bonuses
because “[t]hat’s how he’s always described it to me.”  Mother argues that her
testimony regarding the parties’ understanding of the term “bonus” demonstrates
that they both understood the term in the 2001 modification order to include
commissions.  However, Father testified that his payment in his current
position is structured differently than it was in his previous positions.  Mother
did not testify that after changing jobs to his current position that he
continued to refer to “bonuses” that he received.  Mother’s testimony only
demonstrates her understanding of bonuses in Father’s previous payment
structures, which were structured as salary plus bonuses “throughout the
year.”  Father’s current payment structure is salary plus commissions that were
included in his regular wage checks.  The 2001 modification order stated that
Father was “ordered to deliver to [Mother] within ten days of his receipt of
any bonus check a copy of such check.”  The order did not state that Father was
to deliver a copy of every paycheck he received each month, implying that the
bonuses that Father was to pay 20% to Mother were occasional payments
made in addition to his regular wages.

Father’s
testimony explaining his different payment structures as well as the language
of the order itself support the dictionary definition of bonus and commission
and their common, ordinary usage.  Black’s Law Dictionary defines bonus as “a
premium paid in addition to what is due or expected.”  Black’s Law Dictionary 206
(9th ed. 2009).  In the context of employment compensation, a bonus is “paid
for services or on consideration in addition to or in excess of the
compensation that would ordinarily be given.”  Id.; see also Webster’s
Third New International Dictionary 252 (3d ed. 2002)  (defining bonus as “something
given or received that is over and above what is expected” and “money or an
equivalent given in addition to the usual compensation”).  A commission is “a
fee paid to an agent or employee for a particular transaction, usu[ally] as a
percentage of the money received from the transaction.”  Black’s Law Dictionary
306; see also Webster’s Third New International Dictionary 457 (defining
commission as “a fee paid to an agent or employee for transacting a piece of
business or performing a service,” especially “a percentage of the money
received in a sale or other transaction paid to the agent responsible for the
business”).  That portion of Father’s regular monthly paycheck labeled as a
commission is not a bonus as the term is used in the 2001 modification order. 
The words commission and bonus are not interchangeable.  The original divorce decree
distinguished bonuses and commissions, noting that Father’s employer was to
withhold child support from Father’s “earnings,” which included “wages, salary,
commission, bonus, or otherwise.”  Had the parties intended Father to pay 20%
of his commissions, they could have used the phrase in their agreed order, like
they had done in the past, and required him to pay 20% of his commissions or
bonuses.

The
2001 modification order did not require Father to give Mother 20% of his
commissions. Further, because the trial court did not enter a modification
order after the hearing in 2011, any implied substantive change it made to add
the word commission to the 2001 order is error.  See Escobar v.
Escobar, 711 S.W.2d 230, 231–32 (Tex. 1986) (“The court can only correct
the entry of a final written judgment that incorrectly states the judgment
actually rendered.  Thus, even if the court renders incorrectly, it cannot
alter a written judgment which precisely reflects the incorrect rendition.”).  The
trial court therefore erred by calculating Father’s arrearage to include
commissions he earned.  We sustain Father’s fourth and fifth issues.

3. Arrearage


In
Father’s sixth issue, he argues that the trial court erred in ordering Father
to pay an arrearage because the 2001 order is not sufficiently definite to
support the judgment.  Specifically, he argues that there is no start date for
the payments, that the phrase “net after taxes” is too vague, that there is no
firm due date for payments, and that the order “does not specifically order
[Father] to pay any portion of future compensation, nor does it state that it
applies to subsequent employers.”

To
be enforceable by a money judgment, a child support obligation must be “sufficiently
definite and certain.”  See Wilson, 24 S.W.3d at 905 (citing Villanueva
v. Office of the Attorney Gen., 935 S.W.2d 953, 955 (Tex. App.—San Antonio
1996, writ denied), and Gross v. Gross, 808 S.W.2d 215, 218–19 (Tex. App.—Houston
[14th Dist.] 1991, no writ)).  To be enforceable by contempt, a child support
obligation must “set forth the terms of compliance in clear, specific and
unambiguous terms so that the person charged with obeying the decree will
readily know exactly what duties and obligations are imposed upon him.”  Id.
at 906 (quoting Ex parte Acker, 949 S.W.2d 314, 317 (Tex. 1997)).

Regarding
the start date, Father cites to Ex parte Whitehead, 908 S.W.2d 68, 71
(Tex. App.—Houston [1st Dist.] 1995, orig. proceeding).  Whitehead is
inapposite.  In Whitehead, a child support order was held to be
unenforceable by contempt for a number of reasons, including that “the divorce
decree did not order [the father] to pay any amount of money to anybody at
anytime for insurance” but instead just ordered the father “to keep and
maintain health insurance on the children ‘at all times.’”  Id.  The
appellate court specifically noted that its opinion was “concerned only with
the legality of the contempt findings” and did not affect the trial court’s
money judgment in favor of the mother, which included the unpaid health
insurance.  Id. at 71 n.3.  Father cites to no other case supporting his
proposition that a child support order is insufficiently definite to support an
arrearage because it does not set a start date for periodic payments.  Father
was paid bonuses only occasionally, and there was no evidence that he or anyone
else could foresee with any accuracy when those bonuses would be paid to him. 
It is clear from the order that any future bonus payment Father was to receive,
starting from the date of the order, he was to pay 20% “net after taxes” to
Mother.  Further, Father conceded that he understood the order well enough to
know that the only bonus he received was subject to a 20% payment to Mother.

Father
cites In re T.A.N., No. 07-08-0483-CV, 2010 WL 58334, at *4 (Tex.
App.—Amarillo, no pet.) (mem. op.), for his argument that a child support
obligation that requires a parent to pay a percentage of his net income is too
indefinite to support a judgment of arrearages.  In T.A.N., the father
was ordered to pay 20 percent of his net income, calculated as of his wages on
July 1, 2008.  Id.  The parties agreed, however, that the father never
provided evidence of his wages as of that date, and the calculation had not
been done.  Id.  In this case, the calculation was easily accomplished. 
Father testified that he received a $500 bonus and that Mother was entitled to
20% of his net income from that bonus after taxes.  Mother offered into
evidence Father’s paystubs from 2003, including the paystub for the $500
bonus.  The paystub noted that $173.25 was deducted for taxes, leaving Father a
net bonus of $326.75.  20% of $326.75 is $65.35, a calculation Father made in
his brief on appeal and which he agrees he owes to Mother.  The phrase “net
after taxes” is not so indefinite or ambiguous that a judgment for an arrearage
computed using the phrase cannot stand.  See Dicker v. Dicker,
434 S.W.2d 707, 712 (Tex. Civ. App.—Fort Worth 1968, writ ref’d n.r.e.) (noting
that a property settlement between a husband and wife which orders the husband
to “pay to the Wife the sum of One Hundred Thousand ($100,000.00[)] Dollars,
net after taxes, if any” is “clear and it means what it says”).

Contrary
to Father’s argument that there is no firm due date for payments, the 2001
order expressly states that Father “is ordered to deliver to [Mother] within
ten days of his receipt of any bonus check . . . his personal check for such
20%.”  A ten-day timeframe to make payment to Mother is sufficiently clear,
definite, and unambiguous to support a money judgment.  Father also argues the
order “does not specifically order [him] to pay any portion of future income,
nor does it state that it applies to subsequent employers.”  The order requires
him to pay 20% “net after taxes” of any bonus he receives; it is an order to
pay an amount that is a clearly defined portion of his income.  Finally, the
order states that Father must make the 20% payment to Mother any time he
receives “any bonus . . .  from his employment.”  This too is clear enough that
Father should “readily know exactly what duties and obligations are imposed
upon him.”  Wilson, 24 S.W.3d at 906.  We therefore hold that the 2001
order is not so indefinite that it cannot support a judgment for arrearages.  See
Davis v. Mangan, No. 14-04-00650-CV, 2005 WL 1692048, at *7 (Tex. App.—Houston
[14th Dist.] July 21, 2005, no pet.) (mem. op.) (holding that an order
requiring the father to “pay 50% of all health care expenses not paid by
insurance that are incurred by or on behalf of the parties’ children” clearly
contemplated that the mother would notify the father when such expenses were
incurred and that it was sufficiently definite and certain to permit its enforcement);
In re Watson, No. 07-00-00162-CV, 2000 WL 1179795, at *4 (Tex. App.—Amarillo
Aug. 21, 2000, no pet.) (not designated for publication) (“[A]n order imposing
medical support obligations, including health insurance, need not state a
specific dollar amount for such obligations to be enforceable.”).  We overrule
Father’s sixth issue.

4. Enforcement


In
his seventh issue, Father argues that because the 2001 order did not expressly
state that it was enforceable by contract, Mother cannot enforce the order for
any alleged child support obligations after W.M.R.’s eighteenth birthday.  The
family code provides, “To promote the amicable settlement of disputes between
the parties to a suit, the parties may enter into a written agreement
containing provisions for support of the child and for modification of the
agreement.”  Tex. Fam. Code. Ann. § 154.124(a) (West 2008).  However, the
agreement is not enforceable as a contract unless the order expressly states
so.  Id. § 154.124(c); Bruni v. Bruni, 924 S.W.2d 366, 368
(Tex. 1996); Elfeldt v. Elfeldt, 730 S.W.2d 657, 658 (Tex. 1987).

Father
stated in his motion for new trial that Mother “did not sue for breach of
contract.”  His position now—that Mother is suing on a contract—is an opposite
and inconsistent position to the one he took in the trial court.  See Brooks
v. Brooks, 257 S.W.3d 418, 424 (Tex. App.—Fort Worth 2008, pet. denied)
(holding that it would be unconscionable to allow husband to enforce a mediated
settlement agreement after taking “the clearly inconsistent position” at trial that
it was unenforceable).  Further, section 154.124 does not apply to cases
concerning disabled children.  See Elfeldt, 730 S.W.2d at 658 (noting
that the “suit was brought as a contract action because a court of continuing
jurisdiction under the Family Code has no authority to order or to enforce
support for a non-disabled child over eighteen”) (emphasis added).  Our
opinion in In re K.M.J., No. 02–09–00303–CV, 2011 WL 3525439, at *6 (Tex.
App.—Fort Worth July 28, 2011, no pet.) (mem. op.), to which Father cites,
holds no differently.  In K.M.J., we applied the exception for extended
child support payments beyond age eighteen to section 154.001, not section 154.302, the section under which the trial
court in this case had the authority to order W.M.R.’s support.  See id.;
see also Tex. Fam. Code Ann. §§ 154.001, 154.302 (West 2008); Bruni,
924 S.W.2d at 367 (noting specifically that none of the children in that
case were disabled); Lambourn v. Lambourn, 787 S.W.2d 431, 432 (Tex. App.—Houston
[14th Dist.] 1990, writ denied) (noting that section 154.124 (formerly section 14.06(d))
“clearly requires that the parties to an agreement concerning the support of a non-disabled
child over eighteen must expressly provide in the order incorporating the
agreement that its terms are enforceable as contract terms for that remedy to be
available”) (emphasis added).  We overrule Father’s seventh issue.

5. Confirmation

In
Father’s eighth issue, he argues that a trial court may not confirm an arrearage
when the support order does not contain a specific dollar amount.  The family
code states, “If a motion for enforcement of child support requests a money
judgment for arrearages, the court shall confirm the amount of arrearages and
render one cumulative money judgment.”  Tex. Fam. Code Ann. § 157.263(a)
(West Supp. 2012).  Father does not cite to any case law for his proposition
that an arrearage based on a percentage cannot be confirmed.  The statute does
not require a child support order to state a specific money amount in order to
be confirmed under section 157.263, nor have we found any cases in which a
confirmation was denied on this basis.  On the contrary, we have found a number
of cases in which support payments calculated as a percentage were required to
be reduced to a cumulative money judgment.  See, e.g., In re J.I.M.,
281 S.W.3d 504, 505, 508 (Tex. App.—El Paso 2008, pet. denied) (holding that
the trial court was required under section 157.263 to confirm the amount of
arrearages and render an cumulative money judgment when the divorce decree
ordered that child support payments be calculated as a percentage of father’s
salary and that additional child support would be “twenty percent of the net
amount of bonuses received by him from his employer”); Davis, 2005 WL
1692048, at *1, *7 (upholding a cumulative money judgment under section 157.263
when the underlying order required father to pay 50% of uninsured medical
costs); In re S.R.O., 143 S.W.3d 237, 248 (Tex. App.—Waco 2004, no pet.)
(concluding that the trial court erred in not including in the cumulative money
judgment for arrearages fifty percent of the unreimbursed health care expenses the
children had incurred).  We fail to see how, as Father argues, the court is
going beyond acting as a “mere scrivener” when it applies a simple mathematical
formula to determine a percentage of a proven amount.  See Curtis v. Curtis,
11 S.W.3d 466, 471 (Tex. App.—Tyler 2000, no pet.) (noting that under section
157.262 “the trial court acts as ‘a mere scrivener’ who mechanically tallies
the amount of arrearages”) (quoting Lewis v. Lewis, 853 S.W.2d
850, 854 (Tex. App.—Houston [14th Dist.] 1993, no writ)).  We overrule Father’s
eighth issue.

6.
Sufficiency of the evidence 

In
Father’s ninth issue, he challenges the sufficiency of the evidence supporting
the arrearage amount.  Because we sustained Father’s fourth and fifth issues,
we do not need to reach his ninth issue to the extent he complains of the
arrearage based on his commissions.  See Tex. R. App. P. 47.1.  As to
the arrearage based on his bonus, Father conceded that he received the $500
bonus and that he owes Mother 20% of that bonus after taxes.  We therefore
overrule Father’s ninth issue as to the $65.35 in arrearages.

7. Discretionary
order

In
Father’s tenth issue, he argues that the trial court abused its discretion by
allowing Mother to purchase a van specially equipped to transport W.M.R.’s
wheelchair and by requiring Father to pay half of those expenses. 
Specifically, Father complains that there is no reasonableness requirement or
some other mechanism that limits Mother’s ability to incur expenses for which
Father would be liable.

Father
offers no cases to support this argument.  However, there are numerous cases in
which the court upheld a child support order requiring one parent to pay for
unquantifiable expenses.  See K.M.J., 2011 WL 3525439, at *1
(“The agreed order also required James to pay half of all medical expenses and half
of all costs associated with school activities.”); In re A.C.B., 302
S.W.3d 560, 562 (Tex. App.—Amarillo 2009, no pet.) (holding that evidence
supported trial court’s order requiring father to reimburse mother for half of
private school tuition, fees, and extracurricular activities); Nordstrom v.
Nordstrom, 965 S.W.2d 575, 577 (Tex. App.—Houston [1st Dist.] 1997), cert.
denied, 524 U.S. 1142, 119 S. Ct. 1034 (1999)) (ordering Father to pay
half of any necessary tutoring costs and half of all uninsured medical costs); In
Interest of J.M. & G.M., 585 S.W.2d 854, 855 (Tex. Civ. App.—San
Antonio 1979, no writ) (noting that the divorce decree ordered the father to
pay for a college education for each of the children; to remain responsible for
one-half of their medical and dental expenses; and to pay all tuition costs).

Additionally,
we note that Mother must pay the other half of the van-related expenses, and
the evidence was that her income is less than Father’s income.  Her ability to
pay her share of the expenses is certainly one limitation on the amount she
will incur.  Considering that there is no requirement that a court may only
order support in a definite amount, and considering that Mother is restrained
by her ability to pay the same amount of expenses that Father is required to
pay, we cannot say that the trial court abused its discretion by ordering
Father to pay half of any van-related expenses that Mother incurs.  See In
re Marriage of Grossnickle, 115 S.W.3d 238, 248 (Tex. App.—Texarkana 2003,
no pet.) (holding that, although not enforceable by contempt, trial court’s
order that father pay one half of daughter’s private school tuition, which “ha[d]
the potential to change from year to year,” was not an abuse of discretion).  We
overrule Father’s tenth issue.

8. Agreed
Offsets 

          In
his eleventh issue, Father argues that the trial court did not credit Father
with the agreed offset of $1,000 for the annuity payments W.M.R. receives.  First,
there is no evidence that the trial court did not credit Father for the
offset.  The trial court’s award matches exactly the amount Mother calculated
in the summary she provided to the court.  Mother’s summary credits Father with
$1,000 a month beginning at W.M.R.’s eighteenth birthday.  Secondly, we
sustained Father’s issue regarding the arrearage based on his commissions and
reformed the cumulative money judgment to $65.35 (20% of Father’s $500 bonus,
net after taxes), which was not subject to a reduction.  We therefore overrule
Father’s eleventh issue.

9. Trial
amendment 

In
Father’s twelfth issue, he argues that the trial court abused its discretion by
not permitting his trial amendment, which he argues was necessary to comport
the pleadings with the proof adduced at trial.  Specifically, Father focuses on
his request to include an affirmative defense that Mother’s claim is time barred
by a four-year statute of limitations.  The trial court held its hearing on February
7, 2011, March 10, 2011, and May 13, 2011.  Father filed his motion for leave
to amend his pleadings on June 29, 2011.  Texas Rule of Civil Procedure 63 states
that parties may amend their pleadings after trial by leave of the court “unless
there is a showing that such filing will operate as a surprise to the opposite
party.”  Tex. R. Civ. P. 63.  The decision to allow or deny the amendment rests
with the sound discretion of the trial court, and the trial court’s decision
will not be overturned unless it constitutes a clear abuse of discretion.  G.R.A.V.I.T.Y.
Enters., Inc. v. Reece Supply Co., 177 S.W.3d 537, 542 (Tex.
App.—Dallas 2005, no pet.).

A
trial amendment that asserts a new cause of action or defense is “prejudicial
on its face.”  Hakemy Bros., Ltd. v. State Bank & Trust Co.,
Dallas, 189 S.W.3d 920, 924 (Tex. App.—Dallas 2006, pet. denied) (citing State
Bar v. Kilpatrick, 874 S.W.2d 656, 658 (Tex. 1994) (per curiam)).  The
party opposing the amendment generally has the burden to show prejudice or
surprise, but the trial court may conclude the amendment is on its face
calculated to surprise or that the amendment would reshape the cause of action,
prejudicing the opposing party and unnecessarily delaying the trial.  Id.
at 924, 940; see Chapin & Chapin, Inc. v. Tex. Sand & Gravel Co.,
Inc., 844 S.W.2d 664, 665 (Tex. 1992); Hardin v. Hardin, 597 S.W.2d
347, 349 (Tex. 1980).  In that situation, the opposing party’s objection is
sufficient to show surprise.  Greenhalgh v. Serv. Lloyds Ins. Co., 787
S.W.2d 938, 940 n.3 (Tex. 1990).

To
support his argument that the amendment would have conformed the pleadings to
the evidence presented at trial by Mother, thereby creating no surprise or
prejudice, Father cites to Krishnan v. Ramirez, 42 S.W.3d 205, 225 (Tex.
App.—Corpus Christi 2001, pet denied).  In Krishnan, the appellate court
upheld the trial court’s decision to allow a post-trial amendment because the
“appellant did not make any showing to the trial court that her settlement
strategy or her trial posture would have changed knowing that she risked full
range exposure at trial.  She has not shown evidence of surprise or prejudice.”
 Id.  In Krishnan, the appellant contended that she was
prejudiced because “the amended pleadings exposed her to a full claim instead
of the two-thirds claim and her settlement strategy would have been greatly
influenced by knowing that she risked full range exposure at trial.”  Id.  Krishnan,
however, is not fully supportive of Father’s argument for two reasons.  First, the
appellee in Krishnan sought to amend his pleadings during the trial,
while here Father sought an amendment forty-seven days after three hearings
were concluded.  See id.  Second, in Krishnan the appellee
was not seeking to add a new cause of action or defense while here, Father has
sought to add numerous new causes of action.  See id.

Father
also argues that Mother only offered general, conclusory, non-specific
contentions of being surprised or prejudiced; she did not offer a supporting
affidavit for her objection, and no witnesses were called at the hearing testifying
to specific facts to support her surprise or prejudice.  Father, however, does
not cite any case law to support this argument that Mother must prove any of
these things to substantiate her surprise or prejudice.  To the contrary, Mother
only had to object to the trial amendment alleging surprise or prejudice,
because in a situation where “the amendment would reshape the cause of action,
prejudicing the opposing party . . . the opposing party’s objection is
sufficient to show surprise.”  Hakemy Bros., 189 S.W.3d at 924; see
Chapin & Chapin, 844 S.W.2d at 665 (“A
party opposing a trial amendment does not have to prove prejudice or surprise
if the amendment is a substantive one which changes the nature of the trial.”);
Greenhalgh, 787 S.W.2d at 940 (“A newly plead affirmative defense
substantially changes the nature of a trial unlike adding a verified plea
conforming to issues already pleaded, amending the amount of damages claimed.”).
 Father pointed to no evidence indicating that Mother should have known that
Father’s affirmative limitations defense would be at issue.  See White v.
Sullins, 917 S.W.2d 158, 161 (Tex. App.—Beaumont 1996, writ denied) (holding
that trial court did not abuse its discretion in denying a trial amendment
adding a comparative negligence defense when “the record contains nothing
indicating the plaintiffs should have known comparative negligence was an issue”). 
We cannot say that the trial court abused its discretion in denying the trial
amendment.  See Hakemy Bros., 189 S.W.3d at 926; see
also Burroughs Corp. v. Farmers Dairies, 538 S.W.2d 809, 811 (Tex. Civ.
App.—El Paso 1976, writ ref’d n.r.e.) (“It is held that a trial amendment
ordinarily should be denied when sought after the evidence for both parties has
been fully offered and when it would change the theory of the trial.”).

Father
argues that, in the alternative, the statute of limitations issue was tried by
consent.  Father claims that the issue of the amount and date of payments were
fully litigated during the trial.  He also argues that “[t]he evidence adduced
at trial made clear that the four year statute of limitations barred the
recovery sought by [Mother], because she was seeking to recover alleged
payments which she claimed were due nearly ten years prior.”  To determine
whether an issue was tried by consent, the court must examine the record not
for evidence of the issue, but rather for evidence of trial of the issue.  In
re P.D.D., 256 S.W.3d 834, 840 (Tex. App.—Texarkana 2008, no pet.).  Rule
67 applies “where it clearly appears from the record as a whole that the
parties tried out a controverted issue and that the issue was fully developed.”
 Fiduciary Mortgage Co. v. City Nat’l Bank of Irving, 762 S.W.2d 196,
202 (Tex. App.—Dallas 1988, writ denied); See Tex. R. Civ. P. 67; Praeger
v. Wilson, 721 S.W.2d 597, 603 (Tex. App.—Fort Worth 1986, writ ref’d
n.r.e.).  “A party’s unpleaded issue may be deemed tried by consent when
evidence on the issue is developed under circumstances indicating both parties
understood the issue was in the case, and the other party failed to make an
appropriate complaint.”  Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.,
184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied).  However, “trial by
consent is inapplicable when evidence relevant to an unpleaded matter is also
relevant to a pleaded issue; in that case admission of the evidence would not
be calculated to elicit an objection.”  Id. (citing In re J.M.,
156 S.W.3d 696, 705 (Tex. App.—Dallas 2005, no pet.)).  In this case, the amount
and date of payment were raised to enforce the 2001 child support order; nothing
in the record indicates that Mother understood that limitations was at issue or
that the evidence of dates of payment should have elicited an objection.  Because
the evidence to which Father cites in support of his limitations claim was
relevant to pleaded issues, trial by consent is inapplicable in this case.  See
P.D.D., 256 S.W.3d at 840; Case Corp., 184 S.W.3d at 771.  We
overrule Father’s twelfth issue.

10. Excessive
support 

In
Father’s thirteenth issue, he argues that the trial court abused its discretion
by ordering Father to pay excessive child support.  He claims that the trial
court did not take into consideration Father’s ability to pay and his right of
self-subsistence.  To determine the amount of support to be paid after a
child’s eighteenth birthday, section 154.306 of the family code states that the
court shall give special consideration to the following factors:

(1) any existing or
future needs of the adult child directly related to the adult child’s mental or
physical disability and the substantial care and personal supervision directly
required by or related to that disability;

 

(2) whether the
parent pays for or will pay for the care or supervision of the adult child or
provides or will provide substantial care or personal supervision of the adult
child;

 

(3) the financial
resources available to both parents for the support,   care, and supervision of
the adult child; and

 

(4) any other
financial resources or other resources or programs available for the support,
care, and supervision of the adult child.

 

Tex.
Fam. Code Ann. § 154.306 (West 2008).

As
to the first factor, the court heard testimony from Mother concerning W.M.R.’s
existing and future needs.  Documentary evidence was also presented and
considered.  See In re J.L.F., No. 04-01-00654-CV, 2002 WL 1625572, at
*3 (Tex. App.—San Antonio July 24, 2002, no pet.) (not designated for
publication) (holding that the evidence was sufficient to support the first
factor when mother testified that the adult child’s disability existed and
required medical attention, thus indicating that “it [was] likely that
substantial care and personal supervision are required to help [the adult
child] with her disability”); see also In re Gonzalez, 993 S.W.2d
149, 159–60 (Tex. App.—San Antonio 1999, no pet.) (noting that no expert
testimony is required to determine if a child’s need exists).

Turning
to whether the parent pays or provides for the care or supervision of the adult
child, the trial court also considered substantial evidence to support this
factor.  Both parents are not required to make equal monetary contributions.  Instead,
each parent must “contribute money or services to the support and maintenance
of the children according to the respective ability of each parent and the
needs of the children.”  Rose v. Rubenstein, 693 S.W.2d 580, 583 (Tex.
App.—Houston [14th Dist.] 1985, writ dism’d).  (“In determining child support
obligations, courts often recognize that parents make different contributions
to a child’s welfare.”).  The court heard substantial evidence about Mother’s
continuous care for W.M.R. as the primary caregiver.  Father did not provide
daily care for W.M.R.

Sufficient
evidence was also presented for the third factor, the financial resources
available to both parents. The amount of child support that each parent pays
does not solely depend on their earnings.  Instead, “[t]he court should
consider the financial resources available to each parent, the respective
obligations borne by each parent, nonfinancial contributions made and the
standard of living to which the children have been accustomed.”  See id.
(citing Hazelwood v. Jinkins, 580 S.W.2d 33 (Tex. Civ. App.—Houston [1st
Dist.] 1979, no writ)).  For 2010, Mother’s annual income was less than $70,000
and Father’s annual income was approximately $90,000.  Further, Mother was
ordered to pay for half of W.M.R.’s expenses even though she is the primary
caregiver for W.M.R. and her annual income and net resources are less than
Father’s.  Father argues that the court did not consider his right to
self-subsistence, citing Valaque v. Valaque, 574 S.W.2d 608 (Tex. Civ. App.—San
Antonio 1978, no writ), which stands for the proposition that “[t]here is some
minimum amount necessary for a bare [subsistence], and less than such amount
renders a child support order unenforceable.”  Id. at 609–610 (citing Anderson v. Anderson, 503 S.W.2d 124, 127 (Tex. Civ. App—Corpus
Christi 1973, no writ)).  However, the duty to pay child
support is not determined solely by an obligor’s ability to pay from earnings,
but also by his ability to pay from any and all sources that may be available.  See
Tex. Fam. Code Ann. § 154.062 (West Supp. 2012); In Interest of S.B.C.,
952 S.W.2d 15, 18 (Tex. App.—San Antonio 1997, no writ).  Here, evidence of
Father’s significant financial assets included a Toyota 4Runner, a motorcycle,
a BMW, an RV-Ford, a boat, a jet ski, a glider, a trailer, and a plane.  See
Krempp v. Krempp, 590 S.W.2d 229, 231 (Tex. Civ. App.—Fort Worth 1979,
no writ) (ordering Father to pay $1000 in child support was not excessive after
reviewing evidence reflecting a Mercedes-Benz automobile and an airplane).  Father’s
financial information admitted into evidence showed two checking accounts with
balances of roughly $58,000 and $26,000, a 401k with a balance of approximately
$55,000, and an IRA with a balance of almost $70,000.  There was no evidence
presented by Father that he is unable to pay the support.

Finally,
the trial court considered sufficient evidence of other financial resources for
the support, care, and supervision of W.M.R.  This evidence included the
annuity payment that W.M.R. receives in the amount of $1,000 a month.  This
amount, however, is not sufficient to cover all of W.M.R.’s monthly expenses.  See
Rose, 693 S.W.2d at 583 (noting that “[t]he record is quite clear
that Eddie’s earnings of $560 per month do not cover his documented expenses of
$862 per month. . . .  Our review of the record indicates that
Eddie is not currently self-supporting.”).  Mother testified that W.M.R.’s
monthly expenses were $3,931.  Mother’s estimation included items that Father
was already responsible for paying, such as medical expenses.  It was
reasonable for the trial court to reduce Mother’s estimation by those expenses
and then order Father to pay half of the reduced amount.  Father’s savings,
salary, and other financial assets demonstrate that he has the financial
ability to support himself and his son.  Because the trial court considered
sufficient evidence to support each factor, it did not abuse its discretion.  See
In re M.W.T., 12 S.W.3d 598, 607 (Tex. App.—San Antonio 2000, pet.
denied) (“Because the record contains information concerning all of the Section
154.306 criteria, the trial court did not abuse its discretion in assessing
current child support.”).  The trial court’s child support order is not
excessive.  We overrule Father’s thirteenth issue.

11. Attorney’s
Fees 

In
his fourteenth issue, Father argues that the trial court abused its discretion
by awarding attorney’s fees to Mother without an adequate evidentiary
foundation.  Specifically, Father makes two arguments:  (1) that Mother
failed to introduce any evidence that the hourly rates charged by her attorneys
were reasonable; and (2) Mother’s attorney’s fees should not be allowed
because the fees were not segregated between the enforcement action and the
modification action.

The
trial court has broad discretion in awarding attorney’s fees in family law
matters that involve the parent-child relationship.  Hardin, 161 S.W.3d at
24 (citing Tex. Fam. Code Ann. § 106.002 (Vernon 2002)); Bruni, 924
S.W.2d at 368).  This award, however, must be supported by evidence.  Id.
(citing Thomas v. Thomas, 895 S.W.2d 895, 898 (Tex. App.—Waco 1995, no
writ)).  An attorney’s sworn testimony concerning an attorney’s fees award is
considered expert testimony.  Id. (citing Nguyen Ngoc Giao v. Smith
& Lamm, P.C., 714 S.W.2d 144, 148 (Tex. App.—Houston [1st Dist.] 1986,
no writ)).

Father
argues that the evidence was insufficient to support the attorney’s fee award
because Mother’s attorney did not introduce evidence that the specific hourly
rate charged by each attorney and paralegal was reasonable.  Specificity,
however, is not required.  Instead, “[t]o support a request for reasonable
attorney’s fees, testimony should be given regarding the hours spent on the
case, the nature of preparation, complexity of the case, experience of the
attorney, and the prevailing hourly rates.”  Hardin, 161 S.W.3d at 24
(citing Goudeau v. Marquez, 830 S.W.2d 681, 683 (Tex. App.—Houston [1st
Dist.] 1992, no writ)).  The court does not need to hear evidence on each
factor but can “look at the entire record, the evidence presented on
reasonableness, the amount in controversy, the common knowledge of the
participants as lawyers and judges, and the relative success of the parties.”  Hagedorn
v. Tisdale, 73 S.W.3d 341, 353 (Tex. App.—Amarillo 2002, no pet.) (citing Chilton
Ins. Co. v. Pate & Pate Enters., Inc., 930 S.W.2d 877, 896 (Tex.
App.—San Antonio 1996, writ denied)).

In In
re A.S.G., 345 S.W.3d 443, 451 (Tex. App.—San Antonio 2011, no
pet.), the attorney “did not testify to her hourly rate or exact number of
hours spent on the case, [but] she did specifically ask for $1,500 in attorney’s
fees and explained to the trial court their necessity and reasonableness.”  The
court held that this comports with the basic requirements and was sufficient to
support the attorney’s fee award. Id. at 451–52.  In this case, Mother’s
attorney testified regarding each issue and presented an affidavit and billing
record.  The testimony reflected the attorney’s experience, the novelty and
difficulty of the issue in this case, and his opinion that his hourly rate of
$250 was “traditional” for Denton County.  He also detailed his work and
preparations for this case.  The attorney’s testimony and evidence is a
reasonable basis for the award of $29,495.51 for Mother’s attorney’s fees.  See
In re A.B.P., 291 S.W.3d 91, 98–99 (Tex. App.—Dallas 2009, no pet.)
(concluding that attorney’s testimony that he believed his fees were reasonable
and necessary, that he was familiar with the customary fees in the community,
and that he believed his fees fall within that range was sufficient for
attorney’s fee award); Henry v. Henry, 48 S.W.3d 468, 481 (Tex. App.—Houston
[14th Dist.] 2001, no pet.)  (holding that testimony “regarding the
reasonableness of the fees, the hours worked, the rate charged, and the
services provided” was sufficient evidence for attorney’s fee award).

Father
also contends that Mother’s attorney’s fees should not be allowed because the
fees were not segregated between the enforcement action and the modification
action.  Segregation of attorney’s fees is required when two or more causes of
action are involved.  In such a case, “the party asserting those causes must
allocate the time spent between those for which attorneys’ fees may be
recovered and those for which they may not.”  See S. Concrete Co. v.
Metrotec Fin., Inc., 775 S.W.2d 446, 449 (Tex. App.—Dallas 1989, no writ)
(citing Bullock v. Kehoe, 678 S.W.2d 558, 560 (Tex. App.—Houston [14th
Dist.] 1984, writ ref’d n.r.e.)).  An exception exists “when the attorney’s
fees rendered are in connection with claims arising out of the same transaction
and are so interrelated that their ‘prosecution or defense entails proof or
denial of essentially the same facts.’”  Stewart Title Guar. Co. v. Sterling,
822 S.W.2d 1, 11–12 (Tex. 1991).  However, “it is only when discrete legal
services advance both a recoverable and unrecoverable claim that they are so
intertwined that they need not be segregated.”  Tony Gullo Motors I, L.P. v.
Chapa, 212 S.W.3d 299, 313–314 (Tex. 2006).  A court must examine the facts
alleged in support of the claim to determine whether the claims are
inextricably intertwined.  See Kurtz v. Kurtz, 158 S.W.3d 12, 22
(Tex. App.—Houston [14th Dist.] 2004, pet. denied) (citing Stewart Title,
822 S.W.2d at 11–12).  If the prosecution or defense does not entail
proof or denial of essentially the same facts, the exception does not apply.  Air
Routing Int’l Corp. (Canada) v. Britannia Airways, Ltd., 150 S.W.3d 682,
687 (Tex. App—Houston [14th Dist.] 2004, no pet.).

Attorney’s
fees are recoverable in both an enforcement action and modification action.  See
Beck v. Walker, 154 S.W.3d 895 (Tex. App.—Dallas 2005, no pet.) (noting
that “[w]hether to award attorney fees, pursuant to the Family Code, to a child
support obligee who successfully moves to enforce child support is within the
discretion of the trial court); In the Interest of H.S.N., 69 S.W.3d
829, 835 (Tex. App.—Corpus Christi 2002, no pet.) (finding no abuse of
discretion in award of attorney’s fees as child support regarding motion to
modify and motion to transfer).  In this case, the modification action and the
enforcement action were based on the same facts.  Mother’s attorney testified
as to the similarity in preparation for the hearings on both issues.  Mother
was therefore not required to segregate her attorney’s fees.  See Kurtz,
158 S.W.3d at 24 (holding that mother’s defense of father’s counterclaims to
decrease child support and his claim for offsets for payments made directly to mother,
are inextricably intertwined with her child support modification claims because
those claims “arise out of the same transaction and are so interrelated that
their prosecution or defense entails proof or denial of essentially the same
facts”).  We overrule Father’s fourteenth issue.

Conclusion

Having
sustained Father’s fourth and fifth issues and overruled Father’s other issues,
we modify the trial court’s order to reduce the amount of the arrearage to $65.35. 
We affirm the trial court’s order as modified.

 

 

LEE GABRIEL
JUSTICE

 

PANEL: 
WALKER,
MCCOY, and GABRIEL, JJ.

 

DELIVERED:  November 1, 2012









[1]See
Tex. R. App. P. 47.4.





[2]Mother does not dispute
that the arrearage was calculated by including Father’s commissions.





[3]Mother testified at the
hearing that she was asking the trial court to find that “the terms bonus and
commission are the same for the purposes of [the 2001 modification] order.”