# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00523-CV

---

**Appellant, C. S. S.// Cross-Appellant, A. S.**

**v.**

**Appellee, A. S.// Cross-Appellee, C. S. S.**

---

**FROM THE 419TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-FM-19-004143, THE HONORABLE MARIA CANTÚ HEXSEL, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

The parties bring cross-appeals from the trial court's final decree of divorce following a bench trial. In four issues, C.S.S. (Husband) challenges the legal and factual sufficiency of the evidence to support the trial court's division of the community estate, particularly the trial court's determinations of real property values and A.S.'s (Wife) separate property interests in two houses, and its failure to award post-judgment interest. In her cross appeal, Wife requests attorney's fees. For the following reasons, we affirm the trial court's final decree of divorce.

## BACKGROUND

The parties were informally married in September 2003, they ceased living together in 2017 or 2018, and Husband filed for divorce in June 2019.[1]

The bench trial occurred in October 2022. The parties' disputes concerned the division of the community estate. During their marriage, the parties generally kept their finances separate, but relevant to this appeal, they formed La Tierra de Simmons Familia, Ltd., and Magic Couple, Inc., the 1% general partner of La Tierra. At the time of the parties' divorce, La Tierra owned commercial properties. In the final decree, the trial court awarded La Tierra and Magic Couple to Wife and, based in part on the trial court's determinations of the values of La Tierra's commercial properties, equalized the division of the community estate by awarding Husband $7,613,744.84. The trial court ordered Wife to pay this amount in three equal lump-sum payments of $2,537,914.95, due 180, 360, and 540 days after the final decree was signed and entered.

Both parties testified and presented expert witness testimony as to real property values in the community estate, including opinions as to the values of La Tierra's commercial properties. Wife's expert prepared reports in April 2021 of his opinions on real property values, which reports were admitted as exhibits, but testified that he would need to do "more due diligence" to provide opinions as to market values at the time of trial. He believed that market conditions had changed and that some of the property values had "[l]ikely" increased but also testified that a few of the properties had not increased in value. Husband's expert provided "back of the napkin" opinions of current market values. In response to a motion for

---

[1] The parties' child was no longer a minor when the bench trial occurred and is not addressed in the final decree of divorce.

reconsideration and without objection from Husband, Wife also provided the trial court with a spreadsheet that included tax appraisal values of La Tierra's commercial properties, which the trial court admitted as an exhibit in the case. The trial court granted the motion for reconsideration in part and increased its determinations of the values of La Tierra's commercial properties for purposes of its division of the community estate.

The parties' disputes also concerned separate property issues, particularly Wife's separate property interests in two houses, the "Glenview" house and the "Cape Cod" house. The parties purchased the Glenview house in 2014. Wife's separate property during the marriage included another house—the "Rocky River" house—that she was under contract to sell and that was scheduled to close on the same day as the closing to purchase the Glenview house. Wife intended to use $200,000 of the proceeds from the sale of the Rocky River house as a downpayment toward the purchase price of $955,000 on the Glenview house. After the closing on the Rocky River house was delayed, Wife obtained a short-term "bridge" loan of $200,000 against her separate property interest in shares of Amy's Ice Creams and used the borrowed funds at closing as the downpayment on the Glenview house. After the closing on the Rocky River house approximately a month later, Wife paid the $200,000 loan off from the proceeds of that house's sale. The evidence was undisputed that Wife was the majority shareholder of Amy's Ice Creams and that her shares, which she had owned prior to the parties' marriage, were her separate property. In the final decree, the trial court awarded the Glenview house to Wife and, for purposes of its division of the community estate, found that Wife had a 20.94% separate property interest in the house.[2]

---

[2] 200,000 is 20.94% of 955,000. The trial court's value of the Glenview house was $1,610,000, and the debt on the house was $401,429.63. Based on these amounts and for

3

As to the Cape Cod house, Wife purchased the house in 2019, paying for the house in part with inherited funds. The Wife presented evidence that she paid $154,700 from funds that she had inherited toward the purchase of the Cape Cod house. The purchase price was $1,325,000. In the final decree, the trial court awarded the Cape Cod house to Wife and, for purposes of its division of the community estate, found that Wife had a 11.68% separate property interest in the house.[3]

Husband filed a motion for new trial, motion for judgment notwithstanding the verdict, and motion to modify the judgment. Among his complaints, Husband contended that the trial court should have awarded him post-judgment interest on the equalization payments. The motions were overruled by operation of law. This appeal followed.

## ANALYSIS

**Standard of Review**

Husband's issues primarily challenge the trial court's division of the community estate and the trial court's characterization of property. We review these types of challenges for an abuse of discretion. *Eichhorn v. Eichhorn*, No. 03-20-00382-CV, 2022 Tex. App. LEXIS 3453, at *4 (Tex. App.—Austin May 20, 2022, no pet.) (mem. op.); *see Morris v. Veilleux*, No. 03-20-00385-CV, 2021 Tex. App. LEXIS 7878, at *17 (Tex. App.—Austin Sept. 24, 2021,

---

purposes of its division of the community estate, the trial court found that the value of Wife's separate property interest was $337,172.77 (approximately 20.94% of $1,610,000) and that the value of the community property interest was $871,397.60.

[3] 154,700 is approximately 11.68% of 1,325,000. The trial court's value of the Cape Cod house was $1,650,000, and the debt on the house was $989,396.56. Based on these amounts and for purposes of its division of the community estate, the trial court found that the value of Wife's separate property interest was $192,646.35 (approximately 11.68% of $1,650,000) and that the value of the community property interest was $467,957.09.

4

no pet.) (mem. op.) ("We review the trial court's property division for abuse of discretion." (citing *O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.))); *see also Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981) (stating that trial court has discretion to balance relevant factors and determine proper division). "The test of whether the trial court abused its discretion is whether the court acted arbitrarily or unreasonably, and without reference to any guiding principles." *Morris*, 2021 Tex. App. LEXIS 7878, at *17–18 (quoting *Hailey v. Hailey*, 176 S.W.3d 374, 380 (Tex. App.—Houston [1st Dist.] 2004, no pet.)).

"Here, as in other family law cases, the abuse-of-discretion standard and traditional sufficiency standards of review overlap." *Goyal v. Hora*, No. 03-19-00868-CV, 2021 Tex. App. LEXIS 4205, at *3 (Tex. App.—Austin May 27, 2021, no pet.) (mem. op.) (citing *Sink v. Sink*, 364 S.W.3d 340, 344 (Tex. App.—Dallas 2012, no pet.)). "In these cases, legal and factual insufficiency are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion." *Id.* (citing *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.); *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied)). "Thus, in determining whether the trial court abused its discretion, we consider whether the court had sufficient evidence upon which to exercise its discretion, and if so, whether it erred in the application of that discretion." *Id.* at *3–4 (citing *Coburn*, 433 S.W.3d at 823; *Zeifman*, 212 S.W.3d at 588). "When the record contains some evidence of a substantive and probative character supporting the trial court's decision, there is no abuse of discretion." *Id.* at *5 (citing *Tran v. Nguyen*, 480 S.W.3d 119, 128 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.)).

**Real Property Valuations**

In his first issue, Husband argues that the expert testimony presented by Wife on the value of real property in the community estate was legally and factually insufficient to establish the value of the community assets as of the date of divorce and, therefore, that the trial court erred and/or abused its discretion in relying on this testimony to value the real property in the community estate.

"In a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code § 7.001. "We presume on appeal that the trial court correctly exercised its discretion when dividing property in a divorce proceeding, and the appellant bears the burden to show from the record that the division was so disproportionate, and thus unfair, that it constitutes an abuse of discretion." *O'Carolan v. Hopper*, 414 S.W.3d 288, 311 (Tex. App.—Austin 2013, no pet.) (citing *Grossnickle v. Grossnickle*, 935 S.W.2d 830, 836 (Tex. App.—Texarkana 1996, writ denied)).

In general, "market value" is the method to value community property that is to be divided in a divorce proceeding. *R.V.K. v. L.L.K.*, 103 S.W.3d 612, 618 (Tex. App.—San Antonio 2003, no pet.); *accord Mandell v. Mandell*, 310 S.W.3d 531, 536 (Tex. App.—Fort Worth 2010, pet. denied). "Fair market value has been consistently defined as the amount that a willing buyer, who desires to buy, but is under no obligation to buy would pay to a willing seller, who desires to sell, but is under no obligation to sell." *R.V.K.*, 103 S.W.3d at 618 (quoting *Wendlandt v. Wendlandt*, 596 S.W.2d 323, 325 (Tex. App.—Houston [1st Dist.] 1980, no writ)).

For purposes of determining the division of the community estate, the trial court generally values community assets as of the date of divorce. *O'Carolan*, 414 S.W.3d at 311. "In

valuing the assets in the estate, if several values are given, or if a witness testifies that the value may be higher or lower than his estimate, the court's determination of the value should be within the ranges in the evidence." *Banker v. Banker*, 517 S.W.3d 863, 870 (Tex. App.—Corpus Christi–Edinburg 2017, pet. denied) (citing *Van Heerden v. Van Heerden*, 321 S.W.3d 869, 880 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Mata v. Mata*, 710 S.W.2d 756, 758 (Tex. App—Corpus Christi–Edinburg 1986, no writ)). "Where the uncontested evidence establishes only one value, the trial court cannot draw a different inference." *Id.* (citing *Mata*, 710 S.W.2d at 758).

Husband's challenge to the sufficiency of the evidence appears to be directed to the trial court's determinations of the values of La Tierra's commercial properties for purposes of its division of the community estate. Husband contends that "the foundational data" used by Wife's expert to form his opinions as to real property values, particularly the values of La Tierra's commercial properties, was "unreliable and constituted no more than a scintilla of evidence" because the expert's valuation reports were based on data from April 2021, and the expert testified that he would need more information to provide opinions as to market values on the date of the divorce in October 2022.

In response to Husband's motion for reconsideration before the trial court and on appeal, Wife acknowledges that the tax appraisal values were more current than her expert's opinions on values. She represents that she "was willing to stipulate to the [trial court's] use of those numbers to determine the appropriate calculation for the payment to equalize the division of the community estate," that the trial court admitted the spreadsheet of tax appraisal values without objection by Husband, and that "it appears that based on [Husband's] argument in this appeal and [her] agreement, those are the numbers that should be used to calculate the correct

7

payment to equalize the division of the community estate." Wife further argues that the "only uncontested evidence regarding value were the tax appraisal values" and, therefore, "[t]hose are the values that the court should have used in its calculation."

In his reply brief, Husband contends that the trial court could not rely on the tax appraisal values to make the property division between the parties because tax appraisal values "do not reflect the true value of real property," and Wife testified at trial that tax appraisal values were "clearly not market values."[4] Wife also states on appeal that "[t]he evidence at trial regarding property values was mixed" and that the trial court's valuations were within the range of evidence.[5] In making its determinations in the final decree, in addition to the tax appraisal values and the evidence from Wife's expert, the trial court could have relied on the opinions of the parties and Husband's expert as to real property values. *See Jatex Oil & Gas Expl. L.P. v. Nadel & Gussman Permian, L.L.C.*, 629 S.W.3d 397, 406 (Tex. App.—Eastland 2020, no pet.) ("Under the Property Owner Rule, a property owner is generally qualified to testify to the value

---

[4] To the extent Husband raises new arguments that he did not raise before the trial court or in his appellant's brief about the tax appraisal data, he has waived those arguments. *See* Tex. R. App. P. 33.1(a); *McFadden v. Olesky*, 517 S.W.3d 287, 293 n.3 (Tex. App.—Austin 2017, pet. denied) ("Ordinarily, an argument asserted for the first time in a reply brief is waived and need not be considered by an appellate court."). For example, he contends that the trial court could not consider the tax appraisal values because they were not properly proven up or presented to the trial court through a sponsoring witness, but he did not object to the admission of the spreadsheet showing the values when it was offered by Wife, and the spreadsheet was admitted before the trial court signed the final decree of divorce.

[5] In her brief, Wife agreed with Husband's statement:

> In valuing the assets in the community estate, if several values are given, or if a witness testifies that the value may be higher or lower than his estimate, the court's determination of the value should be within the ranges in the evidence.

She then represents that using her expert's values or the tax appraisal values would keep the trial court within the ranges of the evidence on values.

8

of his property even if he is not an expert and would not be qualified to testify to the value of other property." (citing *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 852–53 (Tex. 2011))); *Sadeghian v. Jaco*, No. 05-18-00838-CV, 2020 Tex. App. LEXIS 670, at *14 (Tex. App.—Dallas Jan. 23, 2020, pet. denied) (mem. op.) (explaining that when tax appraisal is admitted without objection, "it can constitute some probative evidence on which the fact finder could rely to determine the fair market value of real property"). Thus, we conclude that there was sufficient evidence for the trial court to consider in making its determinations of values. *See Goyal*, 2021 Tex. App. LEXIS 4205, at *5.

Based on our review of the evidence of the varying opinions, we also observe that the trial court's determinations of real property values were within the ranges of this evidence.[6] *See Banker*, 517 S.W.3d at 870. In this context, we cannot conclude that based on its determinations of real property values, the trial court abused its discretion in its division of the community estate. *See O'Carolan*, 414 S.W.3d at 311 (explaining that on appeal, appellate court presumes trial court correctly exercised its discretion when dividing property in divorce proceeding and appellant bears burden to show from record that division was so disproportionate, and thus unfair, that it constitutes abuse of discretion). We overrule Husband's first issue.

---

[6] For example, for purposes of its property division, the trial court assigned the value of $258,497.40 to one of La Tierra's commercial properties. This value was within the range of the valuation evidence from: (i) Husband (between $250,000 and $300,000), his expert ($240,000), Wife ($262,500), her expert ($246,188), and (ii) the tax appraisal value ($132,228).

9

**Challenges to Wife's Separate Property Interests**

In his second and third issues, Husband contends that the trial court erred and/or abused its discretion when it awarded separate property interests to Wife in the Glenview house and the Cape Cod house.

*Characterization of Property as Community or Separate Property*

"Property owned or claimed by the spouse before marriage" or "[p]roperty acquired by the spouse during marriage by gift, devise or descent" is separate property. Tex. Fam. Code § 3.001. "Community property consists of the property, other than separate property, acquired by either spouse during marriage." *Id.* § 3.002. "Property possessed by either spouse during or on dissolution of marriage is presumed to be community property." *Id.* § 3.003(a).

"Parties claiming certain property as their separate property have the burden of rebutting the presumption of community property." *Goyal*, 2021 Tex. App. LEXIS 4205, at *13 (quoting *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011)). "Meeting this burden requires tracing and clearly identifying the property in question as separate by clear and convincing evidence." *Id.*; *see* Tex. Fam. Code § 3.003(b) ("The degree of proof necessary to establish that property is separate property is clear and convincing evidence."). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 354 (Tex. App.—Austin 2002, pet. denied); *see also Goyal*, 2021 Tex. App. LEXIS 4205, at *14–15 (describing "higher standards of review" for legal and factual sufficiency when burden of proof is clear and convincing evidence). "We resolve any doubt as to the character of property in favor of community status."

*Goyal*, 2021 Tex. App. LEXIS 4205, *16 (citing *Sink*, 364 S.W.3d at 345).  But "[a] party's own testimony is sufficient to rebut the community property presumption if it is uncontroverted." *Bean v. Bean*, 658 S.W.3d 401, 417 (Tex. App.—Dallas 2022, pet. denied).

"Characterization of property" as separate or community property "is determined by the time and circumstances of its acquisition."  *Rivera v. Hernandez*, 441 S.W.3d 413, 420 (Tex. App.—El Paso 2014, pet. denied) (citing *Leighton v. Leighton*, 921 S.W.2d 365, 367 (Tex. App.—Houston [1st Dist.] 1996, no writ)).  "This doctrine, known as 'inception of title,' arises when a party first has right of claim to the property by virtue of which title is finally vested."  *Id.* (citing *Scott v. Estate of Scott*, 973 S.W.2d 694, 695 (Tex. App.—El Paso 1998, no pet.)); *see, e.g.*, *Wilkerson v. Wilkerson*, 992 S.W.2d 719, 722 (Tex. App.—Austin 1999, no pet.) (explaining "time of inception of title" in context of contract for deed or installment contract to acquire real property).  "If the community estate of the spouses and the separate estate of a spouse have an ownership interest in property, the respective ownership interests of the marital estate are determined by the rule of inception of title."  Tex. Fam. Code § 3.006.

"Where an asset is purchased during marriage with monies traceable to a spouse's separate estate, the asset may appropriately be characterized as separate property."  *Rivera*, 441 S.W.3d at 419–20 (citing *Pace v. Pace*, 160 S.W.3d 706, 711 (Tex. App.—Dallas 2005, pet. denied)); *see Bean*, 658 S.W.3d at 416 (describing "burden of tracing" to establish separate property).  "Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property."  *Ganesan*, 96 S.W.3d at 354.

11

*Glenview House*

In his second issue, Husband contends that the evidence was legally and factually insufficient to support the trial court's award to Wife of a 20.94% separate property interest in the Glenview house. Husband contends that Wife failed to introduce evidence to rebut the presumption that the Glenview house, which was acquired during the parties' marriage, was community property. *See* Tex. Fam. Code § 3.002. He focuses on the testimony of Wife's expert that the $200,000 down payment on the home "was just a reimbursement claim for the contribution of $200,000" and "not a separate property claim." *See id.* §§ 3.001 (defining separate property), .003 (stating that property possessed by either spouse during or on dissolution of marriage is presumed community property).

The evidence at trial, however, was uncontroverted that the purchase price for the Glenview house was $955,000 and that Wife paid $200,000 at the closing with funds that she had borrowed against her separate-property majority shares in Amy's Ice Creams. *See Holloway v. Holloway*, 671 S.W.2d 51, 57 (Tex. App.—Dallas 1983, writ dism'd) (explaining that character of debt is separate when express agreement on part of lender "to look solely to the separate estate of the purchasing spouse for satisfaction of the indebtedness"). Wife testified that she obtained the short-term bridge loan against her shares because the sale of the Rocky River house, which she acquired before the parties' marriage and was her separate property, was delayed. When that property sold, she repaid the $200,000 loan to Amy's Ice Creams from the proceeds of that sale. This uncontroverted testimony traced Wife's separate property transactions to the $200,000 payment toward the purchase of the Glenview house. *See Bean*, 658 S.W.3d at 417. Because there was uncontroverted evidence tracing the $200,000 payment to Wife's separate estate, we conclude that there was some evidence of a substantive and probative

12

character supporting the trial court's decision that when Wife and Husband obtained title to the Glenview house, Wife had a separate property interest in it. *See Rivera*, 441 S.W.3d at 419–20; *see also* Tex. Fam. Code § 3.006; *Goyal*, 2021 Tex. App. LEXIS 4205, at *5. Thus, we cannot conclude that the trial court abused its discretion when for purposes of its division of the community estate, the trial court found that Wife had a 20.94% separate property interest in the house. We overrule Husband's second issue.

*Cape Cod House*

In his third issue, Husband contends that the evidence was legally and factually insufficient to support the trial court's award to Wife of an 11.68% separate property interest in the Cape Cod house. He argues that according to the inception of title doctrine, the Cape Cod house was community property because it was acquired during marriage and that there was no evidence to demonstrate that Wife had "*any* separate property interest" in the house.

The evidence was that the purchase price of the Cape Cod house was $1,325,000, and Wife testified that she used inherited funds of $154,700 toward the purchase of the house. Husband argues that "at best" Wife's separate property interest did not exceed 4.65%, relying on Wife's expert's report and testimony that traceable inherited funds supported a 3.49% or 4.65% separate property interest. But the expert's testimony was based on information as to a retirement account that Wife inherited from her mother, the expert testified that she had been unable to review account information as to retirement accounts that Wife had inherited from her father and uncle, and account statements from the other inherited accounts were admitted as exhibits. Wife also testified that she had inherited retirement accounts from her mother, father, and uncle, and that the $154,700 that she paid toward the house purchase was from these

13

inherited accounts. Husband did not present conflicting evidence. For purposes of the trial court's division of the community estate, we conclude that the evidence was sufficient to support the trial court's determination of Wife's separate property interest in the Cape Cod house. *See* Tex. Fam. Code §§ 3.001, .006; *Bean*, 658 S.W.3d at 416–17; *see also Goyal*, 2021 Tex. App. LEXIS 4205, at *5. We overrule Husband's third issue.

**Post-Judgment Interest**

In his fourth issue, Husband argues that the trial court erred by failing to award him post-judgment interest as required by the Texas Finance Code. He contends that he is entitled to post-judgment interest on the cash payments awarded to him in the final decree. The trial court ordered Wife to pay three lump-sum payments of $2,537,914,95, with the following due dates: the first payment, 180 days after the final decree was signed and entered; the second payment, 360 days; and the third payment, 540 days.

As support for his position that the trial court should have awarded post-judgment interest, Husband relies on Section 304.001 of the Texas Finance Code. *See* Tex. Fin. Code § 304.001. Section 304.001 provides, "A money judgment of a court in this state must specify the postjudgment interest rate applicable to that judgment." *Id*. But a cash award to equalize the trial court's division of the community estate is distinct from a money judgment. *See de la Garza v. de la Garza*, 185 S.W.3d 924, 930 (Tex. App.—Dallas 2006, no pet.); *see also* Tex. Fin. Code § 301.002(a)(12) (defining "money judgment" as "a judgment for money"); *cf. Office of the Attorney Gen. of Tex. v. Lee*, 92 S.W.3d 526, 528 (Tex. 2002) (per curiam) (concluding that post-judgment interest accrued on judgment for past-due child support). Rejecting a similar

14

argument to Husband's that post-judgment interest accrues on a cash award that is part of a trial court's division of a marital estate, our sister court explained,

> A party who does not receive payments of money awarded in a divorce decree may file suit to enforce the decree and the trial court may render a money judgment for the amount of unpaid payments. . . . A money judgment is a remedy available to a spouse where the other spouse does not make payments as ordered in the divorce decree.

*de da Garza*, 185 S.W.3d at 930 (citing Tex. Fam. Code §§ 9.001(a), .010(b); *Office of the Attorney Gen. of Tex. v. Wilson*, 24 S.W.3d 902, 905 (Tex. App.—Dallas 2000, no pet.); *Jenkins v. Jenkins*, 991 S.W.2d 440, 445 (Tex. App.—Fort Worth 1999, pet. denied)). Our sister court concluded that the cash awards in the final decree were not a money judgment for purposes of accruing post-judgment interest and distinguished the cash awards with the judgment for past-due child support that was at issue in *Lee*. *See de la Garza*, 185 S.W.3d at 930 (factually distinguishing *Lee* because "appellant had never had the past-due payments on the monetary award reduced to judgment" unlike in *Lee* where judgment obtained for past-due child support supported accruing post-judgment interest). Guided by our sister court's analysis in *de la Garza*, we conclude that the trial court did not err in denying Husband's request to order post-judgment interest on the three lump-sum cash payments. *See id*.

Husband also argues that the trial court should have ordered post-judgment interest based on the trial court's temporary order suspending the lump-sum payments on appeal. In its temporary order, the trial court required Wife to pay the lump-sum amounts into the court registry or post three supersedeas bonds as of the due dates set out in the divorce decree. *See* Tex. Fam. Code § 6.709(a) (authorizing trial court to "render temporary order as considered equitable and necessary for the preservation of the property and the protection of the parties

15

during an appeal"). In this procedural context, Husband has not cited, and we have not found, authority that would require the trial court to order post-judgment interest during the pendency of the appeal.

For these reasons, we overrule Husband's fourth issue.

**Cross-Appeal**

In her cross-appeal, Wife requests attorney's fees if she is successful in defending Husband's appeal or if this Court equalizes the division of the community estate using the tax appraisal values "in lieu of the values actually used by the trial court." Wife does not cite, and we have not found, authority that would support awarding attorney's fees to her on appeal. The final judgment expressly states, "To effect an equitable division of the estate of the parties and as part of the division, each party shall be responsible for his or her own attorney's fees, expenses, and costs incurred as a result of legal representation in this case." Wife has not challenged this trial-court ruling. We deny Wife's request for attorney's fees on cross-appeal.

## CONCLUSION

For these reasons, we affirm the trial court's final decree.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Smith and Theofanis

Affirmed

Filed: September 12, 2024

16